■    In the Matter of D. M. C. CONSTRUCTION CORP., Respondent, v A. LEO NASH STEEL CORP., Appellant.—In a proceeding to compel arbitration, the appeal is from an order of the Supreme Court, Kings County, dated October 8, 1975, which granted the petitioner's motion to change the venue of the arbitration proceeding from Buffalo to New York City. Order affirmed, with $50 costs and disbursements. We find ample ground for Special Term's appropriate exercise of its discretion to have the arbitration proceeding conducted in the city in which the records are located and to avoid unnecessary hardship and needless expense to parties, witnesses, etc. Martuscello, Latham and Margett, JJ., concur; Shapiro, J., dissents and votes to reverse the order and deny the motion to change the venue of the arbitration proceeding, with the following memorandum in which Gulotta, P. J., concurs: The questions on this appeal are (1) whether the Special Term had the power to void the designation of Buffalo by the American Arbitration Association (AAA) as the situs of the arbitration hearings and to change the

venue of the arbitration hearings to New York City and (2) if it had such power, whether, in so doing, it abused its discretion.

The background facts are not in dispute. The petitioner, D. M. C. Construction Corp. (D. M. C.), has its principal place of business in Brooklyn, New York. The appellant, A. Leo Nash Steel Corp. (Nash), a foreign corporation organized in Massachusetts, is qualified to do business in New York State and has designated New York City as its place of business and the place where process may be served upon it. On September 16, 1974, D. M. C. (the contractor) and Nash (the subcontractor) entered into an agreement for construction work to be performed on a geriatric center in the City of Niagara Falls. That contract contained, *inter alia,* a standard arbitration clause which provided that settlement of any disputes were to be determined in accordance with the rules of the AAA. The contract sum was $200,000. On February 11, 1975 D. M. C. instituted an action against Nash for damages, alleging that the latter had breached the contract. On the following day Nash filed a notice of mechanic's lien in Niagara County for $161,920.82, to cover work assertedly performed by it, and then commenced an action to foreclose the lien. Nash thereafter appeared in the D.M.C. action, and moved to compel arbitration, whereupon D.M.C. moved for a stay of arbitration by reason of the pendency of the Nash foreclosure action. That motion was denied and the denial was sustained by this court *(Matter of D. M. C. Constr. Corp. v Nash Steel Corp.,* 50 AD2d 560). During that interval the AAA served notice on D.M.C. to select arbitrators and to proceed to arbitration in Buffalo, New York. D.M.C. then moved at Special Term for an order changing the venue of the arbitration hearings to New York City, arguing that the convenience of witnesses and the location of its books and records, when added to the corporate sites, all warranted the change. Although the record does not contain the applicable rule governing venue hearings, Nash asserts, and D.M.C. does not deny, that, under the AAA rules, if a party objects to the locale requested by his adversary, *the AAA has the power to determine the locale, and its decision is final and binding;*\* that here the AAA requested both parties to submit their detailed contentions in favor of a particular locale; that the parties disagreed as to the locale; that two independent regions of the AAA were involved here, and that both regions chose Buffalo, based upon the contentions and upon information supplied by the parties; and that the two regions had considered the location of parties, witnesses, documents, construction site, contract performance, court actions, and costs to Nash and D. M. C., and had then selected Buffalo. Furthermore, D.M.C., in its brief, admits that it requested the AAA to change the venue of the hearings to New York City because none of the parties or the witnesses resided in Buffalo and because none of the records were located there and that the AAA refused so to do.

Where parties to a contract have solemnly and overtly agreed to place the fate of their disputes in arbitration, courts should proceed with great caution, and only upon an affirmative showing of the violation of some

---

\* We may take judicial notice of the AAA rules (Richardson, Evidence [10th ed], §§ 7, 8, 9, 52); and see the rule set forth in full in *Aerojet-General Corp. v American Arbitration Assn.* (478 F2d 248), and *Matter of Reed & Martin v Westinghouse Elec. Corp.* (439 F2d 1268).

applicable legal principles, before interfering with the processes of the tribunal which they themselves have selected. This rule is even more applicable to procedural threshold questions such as venue, etc. Any other course would dissipate the purpose of the arbitration statutes, which is to encourage the expeditious determination of disputes, and would only embroil the courts in decisions intended to be left to the arbitrators, with a concomitant waste of court time and resources. As Judge Wachtler, speaking for a unanimous court, said in *Matter of Weinrott (Carp)* (32 NY2d 190, 198-199): "When the parties to a contract have reposed in arbitrators all questions concerning the 'validity, interpretation or enforcement' of their agreement, they have selected their tribunal and no doubt they intend it to determine the contract's 'validity' should the necessity arise. * * * The CPLR arbitration provisions (CPLR 7501 *et seq.)* evidence a legislative intent to encourage arbitration. Certainly the avoidance of court litigation to save the time and resources of both the courts and the parties involved make this a worthwhile goal. One way to encourage the use of the arbitration forum would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation. This conduct has the effect of frustrating both the initial intent of the parties as well as legislative policy." And, in *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer.* (37 NY2d 91), Judge Wachtler, again speaking for a unanimous court, said (p 95): "It is always useful to bear in mind that the announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. * * * To this end the Legislature has assigned the courts a minimal role in supervising arbitration practice and procedures." Bearing in mind that the purpose of arbitration is to keep the parties out of court litigation, it would be an unseemly application of arbitration law to hold that a court may review the exercise of discretion by arbitrators as to the site of an arbitration hearing even though the parties agreed that if a dispute should arise between them as to such site, that the determination of that issue would be for the arbitrators and that their determination would be final and binding. Such a holding would fly in the face of the very purposes of arbitration agreements, one of which is the summary disposition of disputes without involving the parties in court litigation. In my opinion, in the absence of some indication of fraud or other cognizable dereliction, a court has no power to interfere with a determination by an arbitrator as to where the arbitration hearings are to be held when the parties have affirmatively agreed that the determination of the arbitrators in that regard shall be final and binding (see *Matter of Royal Globe Ins. Co. v Spain,* 36 AD2d 632). In that case Special Term directed that the arbitration proceedings be held in the State of Connecticut. In reversing, this court said (p 633): "The automobile insurance contract entered into by petitioner and appellant Betty Spain provides that any arbitration had thereunder shall be in accordance with the rules of the American Arbitration Association. The rules of the Association provide that, if the parties to an arbitration do not agree on the locale of the proceeding, the Administrator of the Association shall determine the locale and that such determination shall be final. The parties could not agree on the locale and the Administrator determined that the arbitration proceed in the State of New York. Under the circumstances, it must be deemed that the contract fixed the place of arbitration in New York *(Matter of Bradford Woolen Corp. [Freedman],* 189 Misc 242; *American British T.V. Movies v. KOPR-TV, Copper Broadcasting Co.,* 144 N.Y.S.2d 548)." I am not unaware of the holding in *Aerojet-General Corp. v American Arbitration Assn.* (478 F2d

248, 251) that: "Extreme cases can be imagined in which the choice of locale for arbitration is not made in good faith and severe irreparable injury is inflicted on one or more of the parties. In such case the courts should be free to prevent a manifest injustice. For this reason we decline to hold that immediate judicial review of a ruling setting the place for arbitration is never justified. Cf. Pacific Car & Foundry, Inc. v. Pence, *supra.* Only an extreme case could warrant such judicial review, and this is emphatically not such a case. * * * Nor do we feel that the language in the AAA's Commercial Arbitration Rules that its determination as to locale is 'final and binding' precludes a limited inquiry into whether that determination was made in accordance with a minimum standard of fair dealing." Properly read, the *Aerojet* case merely stands for the proposition that the rules of the AAA do not preclude "a limited inquiry" by a court into whether the venue determination complied with a minimum constitutional standard of fair dealing, or, in "extreme cases", whether the venue determination was made in bad faith, and that in all other cases the arbitrators' determination would be final and conclusive. In this case there is no proof either of bad faith on the part of the AAA or that the parties were not accorded a fair hearing on their respective contentions as to venue. Under the circumstances, both sides having agreed that the determination of venue by the AAA was to be "final and binding", the Special Term, under the facts of this case, was without power to void that determination and to change the venue of the arbitration proceeding from Buffalo, New York to New York City. The order should therefore be reversed and the motion denied.