■ In the Matter of the Arbitration between DOUGLAS S. LIEBHAFSKY et al., Appellants, and COMSTRUCT ASSOCIATES, INC., Respondent. — Order of Supreme Court, New York County (David H. Edwards, J.), entered September 26, 1983, which denied petitioners' application for a stay of arbitration, is affirmed, without costs. ¶ On July 31, 1981, petitioners-appellants Douglas S. Liebhafsky and Wendy Gimbel contracted with respondent Comstruct Associates, Inc., a general contractor, for renovation of their Manhattan townhouse. The work, to be completed by November 15, 1981, at a price of $221,600, was governed by the "General Conditions of the Contract for Construction" of the American Institute of Architects (AIA). ¶ Subparagraph 2.2.9 of the "General Conditions" provides that "[c]laims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time." Subparagraph 2.2.12 of the "General Conditions" provides that such matters submitted to the architect are subject to arbitration upon the written demand of either party made on or after "(1) the date on which the Architect has rendered a written decision, or (2) the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date." Subparagraph 7.9.1 of the "General Conditions" stipulates that "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof * * * shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association". ¶ In early 1982, the respondent contractor unilaterally issued approximately 20 change orders related to the work being done at petitioners' townhouse. Subparagraph 12.1.1 of the "General Conditions" mandates that change orders be signed by the owner and the architect. Subsequent to the issuance of the change orders, petitioners complained to respondent Comstruct of a stairway bracing that did not pass inspection, inadequate on-site supervision, and insufficient record keeping. Petitioners then terminated the contract on March 23, 1982, after receiving certification from the architect that sufficient cause exists to terminate pursuant to subparagraph 14.2.1 of the "General Conditions". ¶ On November 9, 1982, respondent served the petitioners with a demand for arbitration, seeking $151,899 allegedly due because of the change orders and $176 outstanding from the original contract price. Petitioners then commenced this action to stay arbitration, arguing that respondent did not submit the dispute to the architect for determination, pursuant to subparagraphs 2.2.9 and 2.2.12, prior to commencing the arbitration proceeding. Furthermore, petitioners allege that, because they properly terminated the contract, respondent was not entitled to final payment until the work was

completed by a substitute contractor. ¶ In *Matter of County of Rockland (Primiano Constr. Co.)* (51 NY2d 1), the construction work in dispute was governed by "General Conditions" similar to those in the case at bar. Approximately 20 months after a certificate of substantial completion was issued by the petitioner County of Rockland and the respondent Primiano Construction, Primiano demanded arbitral resolution of its claim against Rockland for damages caused by substantial delay. (*Supra,* at p 6.) Rockland, like the petitioners here, asserted that Primiano's claim must first be referred to the architect under subparagraph 2.2.7, which is identical to subparagraph 2.2.9 in this case. The Court of Appeals ruled (p 11) that " 'claims, disputes and other matters in question between the Contractor and the Owner' which must first be referred to the architect are those 'relating to the execution or progress of the work' (subpar 2.2.7). Claims asserted after substantial completion of the work do not fall within the scope of subparagraph 2.2.7." ¶ Here, although no certificate of substantial completion was executed by the parties, the petitioners terminated the contract and the respondent ceased construction before any demand for arbitration was made. Because the scope of the architect's authority is limited to the "operational phases of the construction" (51 NY2d, at p 11), respondent's claim was thus not subject to initial review by the architect. (See *Matter of Pigott Constr. Int. v Rochester Inst. of Technology,* 84 AD2d 679.) ¶ In this case, the contractor's claims are for money due on the contract and do not relate to execution or progress of the work or to interpretation of the contract documents under subparagraph 2.2.9. This subparagraph controls specific matters within the ken of the architect. Here, as in *Primiano,* respondent's assertions are "claims, disputes and other matters in question" controlled by subparagraph 7.9.1 and should proceed directly to arbitration. Concur — Kupferman, J. P., Silverman and Alexander, JJ.

Fein and Kassal, JJ., dissent in a memorandum by Kassal, J., as follows: Petitioners, owners of a townhouse located at 186 Sullivan Street, New York, New York, had engaged respondent as a general contractor to perform extensive alterations to the premises. The written contract, entered into July 31, 1981, provided for progress payments to respondent in the total sum of $221,600, with the work to be completed by November 15, 1981. ¶ According to petitioners, the progress of the job fell significantly behind schedule and, in addition, respondent's work was found to be deficient. Petitioners charged that in January and February, 1982, the contractor unilaterally issued "change orders" which resulted in substantial increases in the cost of construction. Petitioners claim that the issuance of change orders was improper, leading to discussions between the parties in February and March of 1982. These centered upon certain hazardous conditions which the contractor had allowed to exist, including an unsafe condition involving the bracing of a staircase. This is confirmed by a letter from the architect on March 19, 1982, in which he concludes that the installation of a steel plate holding a bracket supporting the existing stair below the fourth floor created a "potentially dangerous" condition and was in substantial violation of the contract documents. Finding that sufficient cause existed to terminate the contract, the architect listed the improprieties found on the job, which included failing to adequately supervise the work, allowing completed work to be left in an unprotected state, employing persons without requisite skills for the tasks assigned, failing to respond to requests to correct deficiencies and failing to provide essential project documentation and contracts with subcontractors. The architect also reported that he had found the roof to be leaking, the stair bracket to be unsafe and the contractor's permitting oil-soaked cloths and volatile thinners to be stored alongside a gas-fired hot water heater to be a hazardous condition. Accordingly, in accordance with subparagraph 14.2.1 of the contract, the architect

certified that "sufficient cause exists to terminate the contract." ¶ As a result, on March 23, 1982, petitioners terminated the agreement and completed the renovation work themselves, incurring additional costs which petitioners claim are chargeable to respondent in accordance with subparagraph 14.2.2 of the general conditions of the contract. In January, 1983, respondent demanded arbitration to recover the balance of the contract price and $151,899, representing the change orders issued by respondent prior to termination of the contract. In moving to stay arbitration, petitioners claimed that the contract required, as a condition precedent to arbitration, the submission of the dispute to the architect. Special Term, finding otherwise, denied the application, holding that the matter should proceed to arbitration, where the conflicting claims of the parties could be resolved and an accounting be obtained. We disagree and, accordingly, would reverse and stay arbitration pending the initial submission to the architect, a condition precedent to any arbitration proceeding. ¶ The general conditions of the contract between the parties designate the architect as "the interpreter of the requirements of the Contract Documents and the judge of performance thereunder by both the Owner and Contractor" (subpar 2.2.7) and vest in the architect exclusive jurisdiction to decide "matters relating to artistic effect * * * if consistent with the intent of the Contract Documents." (Subpar 2.2.11.) Subparagraph 2.2.9 provides for the submission, initially, of any dispute to the architect in matters "relating to the execution or progress of the Work or the interpretation of the Contract Documents" as follows: "2.2.9 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be *referred initially to the Architect for decision* which he will render in writing within a reasonable time." (Emphasis added.) ¶ The arbitration clause, in subparagraph 2.2.12, provides for submission to arbitration only after the dispute had been tendered to the architect: "2.2.12 Any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect, except those relating to artistic effect * * * and except those which have been waived by the making or acceptance of final payment * * * shall be subject to arbitration upon the written demand of either party. *However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of* (1) the date on which the Architect has rendered a written decision, or (2) the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date. When such a written decision of the Architect states (1) that the decision is final but subject to appeal, and (2) that any demand for arbitration of a claim, dispute or other matter covered by such decision must be made within thirty days after the date on which the party making the demand receives the written decision, failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. *If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence*" (emphasis added). ¶ Where the parties have agreed to arbitrate disputes, the function of the court on an application to stay arbitration is limited to "perform[ing] the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration." (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.*, 37 NY2d 91, 96.) The preliminary judicial analysis on such an application, it has been held, involves three threshold questions: (1) whether a valid agreement to arbitrate exists, (2) whether there has been compliance with the agreement and (3) whether, if the foregoing have been satisfied, the claim to be arbitrated would

be barred by Statute of Limitations had such claim been asserted in a judicial action (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 6-7). In this proceeding, the central issue on this appeal concerns the second threshold question, i.e., whether there has been compliance with the arbitration agreement directing that disputes be initially submitted to the architect and whether that provision amounts to a condition precedent to arbitration. This poses a legal issue to be resolved by the court (*Matter of County of Rockland [Primiano Constr. Co.]*, *supra; New York Tel. Co. v Schumacher & Forelle*, 60 AD2d 151; but see *Pearl St. Dev. Corp. v Conduit & Foundation Corp.*, 41 NY2d 167). ¶ *Matter of County of Rockland (Primiano Constr. Co.)* (*supra*), involving an identical contract clause providing for arbitration of disputes, is dispositive here, albeit the factual situation in that case and the nature of the dispute there were different and, on that basis, impelled a direction that the parties proceed to arbitration. Primiano Construction and Rockland County had entered into an agreement for the construction of a health facilities complex and, as in our case, it provided for arbitration of all disputes but with claims and disputes " 'relating to the execution or progress of the Work or the interpretation of the Contract Documents' " to be initially referred to the architect (*supra,* p 10). The parties had executed a certificate of substantial completion of the project as of January 19, 1977. Thereafter, *Primiano* claimed that the county had breached the agreement, resulting in substantial delay damages. The claim was asserted two years after substantial completion of the project and after the building had already been occupied. The Court of Appeals, observing (p 11) that the architect's authority centered on "the operational phases of the construction", concluded that the dispute as to delay damages, asserted after there had been substantial completion of the work, did not relate to " 'the execution or progress of the Work' ", and held that the claim need not be initially referred to the architect as a condition precedent to arbitration. ¶ In our case, unlike *Primiano,* the dispute centers upon "the operational phase of the construction" and, quite clearly relates to both "the execution or progress of the Work" and "the interpretation of the Contract Documents." The claim here pertains to the propriety of change orders issued by the contractor during the course of construction, which petitioners claim had been improperly issued in violation of explicit requirements in the contract. To a large extent, petitioners challenge the sufficiency of the work performed by the contractor, contending that respondent's performance was substandard and palpably improper, creating dangerous and hazardous conditions. Thus, the dispute relates to the contractor's performance on the job, within the scope of subparagraph 2.2.9, and clearly a different type of dispute than the delay damages involved in *Primiano*. In sharp contrast to the facts in that case, here, there was no certificate of substantial completion when the dispute arose. To the contrary, it is alleged that a major portion of the construction remained to be completed when the contractor was terminated, after issuance by the architect of a certificate that sufficient cause existed to terminate the agreement. Contrary to the argument advanced by respondent, the termination of the contract for cause in our case hardly equates with the situation in *Primiano,* where the parties had agreed that the contract had been substantially completed, the dispute was unrelated to the execution or progress of the work and the claim was not asserted until two years after completion, when the building had already been occupied. In addition, the very nature of the dispute at issue here, involving the contractor's compliance with the contract documents and the performance of construction in accordance with accepted safety practices, clearly involves matters "to which the architect might be expected to have a special competence." (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d, at p 10, n 4.) ¶ The claims clearly fall

within the compass of the condition precedent to arbitration, requiring that the parties proceed initially by submission of their dispute to the architect. Further, there are other provisions of the contract which mandate that the matter, at least initially, be submitted to the architect. It is undisputed on this record that the contract had been terminated "upon certification by the Architect that sufficient cause exists to justify such action," in accordance with subparagraph 14.2.1 of the general conditions provided for in the agreement. Following termination, the operative language contained in subparagraph 14.2.2 directs that the unpaid balance due be certified by the architect: "14.2.2 If the unpaid balance of the Contract Sum exceeds the costs of finishing the Work * * * such excess shall be paid to the Contractor. If such costs exceed the unpaid balance, the Contractor shall pay the difference to the Owner. *The amount to be paid to the Contractor or to the Owner, as the case may be, shall be certified by the Architect, upon application, in the manner provided in Paragraph 9.4, and this obligation for payment shall survive the termination of the Contract.*" (Emphasis added.) ¶ The clear import of this clause is to defer payment of the unpaid balance until the work has been completed and an application has been made to the architect to determine the net balance due to the respective parties, as certified by him. Subparagraph 9.4.2 directs the architect, on such an application, to take into account, *inter alia,* that "the quality of the Work is in accordance with the Contract Documents". The result reached at Special Term, affirmed by the majority, overlooks the provisions of article 14 of the contract. In so doing, the majority does not conform to basic principles of contract construction which demand that meaning be given to every sentence, clause and word of a contract, with a reasonable effort made to harmonize and give effect to all parts of the agreement (*Perth Amboy Drydock Co. v New Jersey Mfrs. Ins. Co.,* 26 AD2d 517), with the language to be taken and understood in its plain and ordinary meaning (*Johnson v Travelers Ins. Co.,* 269 NY 401, 408; *Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21). ¶ To conclude, as does the majority, that the submission to the architect is but a useless gesture since any determination by him will not be binding and, therefore, will inevitably result in arbitration in any event, unfairly and improperly minimizes the agreed upon role of the architect in dealing with matters which fall within his expertise and special competence, overlooks his constructive role as a potential mediator and disregards the contract provision that his decision "may be entered as evidence" in any subsequent arbitration proceeding. The language of the contract is plain and the majority has effectively recast the agreement to obliterate the express condition precedent to arbitration, namely, the initial submission of the dispute to the architect. Irrespective of whether the efforts of the architect actually result in amicable resolution, this preliminary step was repeatedly referred to in the agreement and it is not within the province of either party to unilaterally bypass this agreed upon procedure. ¶ Accordingly, the judgment (denominated an order), Supreme Court, New York County (David H. Edwards, J.), entered September 26, 1983, denying petitioners' application to stay arbitration, should be reversed, on the law, the application granted and arbitration stayed pending submission of the dispute for decision by the architect, a condition precedent to arbitration.