Matter of Widrick (Carpinelli) (2018 NY Slip Op 04780)

Matter of Widrick (Carpinelli)

2018 NY Slip Op 04780 [32 NY3d 975]

June 28, 2018

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 7, 2018

[*1]

In the Matter of the Arbitration between Michelle Widrick, Appellant, and Michael Carpinelli, as Sheriff of Lewis County, et al., Respondents.

Decided June 28, 2018

Matter of Widrick (Carpinelli), 155 AD3d 1564, affirmed.

APPEARANCES OF COUNSEL

O'Hara, O'Connell & Ciotoli, Fayetteville (Stephen Ciotoli of counsel), for appellant.
The Law Firm of Frank W. Miller, PLLC, East Syracuse (Frank W. Miller of counsel), for respondents.

{**32 NY3d at 975} OPINION OF THE COURT

Memorandum.
On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order affirmed,{**32 NY3d at 976} with costs. "Our [*2]reading of the collective bargaining agreement as a whole establishes the parties' plain and unambiguous intent to limit the right to demand . . . arbitration to [petitioner's union]" (County of Westchester v Mahoney, 56 NY2d 756, 758 [1982]).
Concur: Chief Judge DiFiore and Judges Stein, Garcia and Feinman. Judge Wilson dissents in an opinion in which Judges Rivera and Fahey concur.
Wilson, J. (dissenting). The majority interprets contractual language giving a fired employee the right to challenge that decision as granting that right to her labor union, not the employee. That is not what the language at issue here says.
Michelle Widrick worked as a dispatcher for the Lewis County Sheriff's Office for 17 years. In August 2015, the Sheriff observed Ms. Widrick and a deputy exchange some papers in the parking lot. The papers were signed petitions nominating the Sheriff's challenger in the upcoming Sheriff's election. When the Sheriff confronted Ms. Widrick and the deputy, they expressed disbelief and frustration with the Sheriff's questioning of their actions, said the papers related to personal, off-the-clock work, and refused to let the Sheriff see the documents. Several days later, the Sheriff sent Ms. Widrick a notice that she was under investigation and that a full and truthful account of the parking lot incident was a "condition of employment." On the advice of counsel, Ms. Widrick submitted a sworn affidavit stating that the papers were signed petitions nominating another deputy as Sheriff. She also claimed the Sheriff had been watching them with binoculars and believed "[i]t was apparent from [the Sheriff's] actions in confronting two department employees for speaking in a public parking lot in open view and broad daylight . . . that [he] suspected [they] were discussing [*3]matters related to the Sheriff's election."
On November 18, the Sheriff sent Ms. Widrick a letter notifying her that she was terminated for cause, because she had committed "serious acts of misconduct," including "dishonesty" and "participating in political campaign activity while on duty." In the notice, the Sheriff expressly stated, in accordance with Ms. Widrick's collective bargaining agreement (CBA): "You are further advised that you must indicate in writing to the Sheriff, within five (5) work days after notification that this discharge action is being imposed, that you either exercise your rights under the grievance and arbitration process or rights provided under Section 75 [of the Civil Service Law]."
{**32 NY3d at 977}On November 29, Ms. Widrick sent an email to the Lewis County Attorney, in which she "exercise[d] [her] right to grieve the termination of [her] employment pursuant to Article XXIII, section (2) (B) of the collective bargaining agreement." On November 30, Ms. Widrick's attorney sent the County Attorney a letter requesting that she "contact the American Arbitration Association to initiate the process for appointing an arbitrator." The Sheriff and County ignored Ms. Widrick's communications, and on December 9, Ms. Widrick's attorney sent another letter, stating that if the County did not respond by December 11, Ms. Widrick would "initiate an action in Lewis County Supreme Court to compel arbitration pursuant to CPLR § 7503." The following day, the County sent Ms. Widrick a letter stating, "[p]ursuant to the terms of the [CBA], there is no recognized grievance filed and the County considers the matter closed." Ms. Widrick's union appears to have been completely uninvolved throughout this time.
Ms. Widrick then commenced this CPLR article 75 proceeding to compel arbitration. Respondents moved to dismiss the petition, on the grounds that Ms. Widrick could not demand arbitration under the CBA. Supreme Court denied respondents' motion to dismiss the petition and granted Ms. Widrick's petition to compel arbitration. The Appellate Division reversed, concluding that "[p]ursuant to the express terms of the collective bargaining agreement between petitioner's union and the County of Lewis, only the union had the right to demand arbitration of a grievance arising from a dispute involving her employment. Here, the union made no demand for arbitration, and petitioner's demand for arbitration had no legal effect" (155 AD3d 1564, 1564 [4th Dept 2017]). The majority agrees, but the CBA's language does not.
Article IV of the CBA ("Grievances & Arbitration") establishes the general grievance procedure available to "all employees." Article IV, section 1 provides that the employee presenting the grievance has the "right to be represented at any and all stages if the employee so chooses" (emphasis added). Section 4 lays out the procedural requirements: an employee must attempt to resolve a dispute informally, and if the employee cannot resolve the dispute, he or she must present a written grievance to the department head. The department head must make a decision within 10 days and communicate it to the employee. Section 5 explains that "[s]hould the . . . decision not be acceptable to [the union], [the union] shall have the right . . . to proceed to {**32 NY3d at 978}binding arbitration as conducted by PERB, the Public Employment Relations Board." Section 5, therefore, does not bar an employee from seeking arbitration, but instead grants the union the right to proceed to arbitration if the union is dissatisfied with the result of the general grievance procedure—even if the employee is satisfied, because the result may have consequences for other union members.[FN*] That language facially grants the union a right to proceed, but does not purport to remove any right of an employee.
There are several provisions of the CBA that do grant an employee the power to elect [*4]arbitration. Article XXIII relates to "Discharge & Discipline," and states that, if the employee is covered under section 75 of the Civil Service Law, "[a disciplinary action] may be processed either by the grievance and arbitration procedure[,] or by a hearing as provided by said Section of Civil Service law, as such employee may elect" (emphasis added). Although the employer must give notice of the reason for discipline to the employee, the Union Steward, and the Union President, it is the employee who "must indicate in writing . . . that he/she elects either to exercise his/her rights under the grievance, and arbitration procedure or the rights provided by Section 75" (emphasis added). Article IV, section 5, which provides for the union's right to proceed to arbitration, could be read as applicable to grievances other than those related to discipline, which would harmonize the language from article XXIII with that in article IV.
The language of the CBA clearly grants the employee the right to elect arbitration. Even were the agreement ambiguous in that regard, it must be construed in favor of the employee's right to demand arbitration. New York has established a policy favoring arbitration (see Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975] [New York "favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties"]), and the CBA itself provides that "[i]n order to establish a more harmonious and cooperative relationship between the County . . . and its [p]ublic [e]mployees . . . [t]he provisions of this resolution shall be liberally construed."
The majority's contrary interpretation—that the CBA gives the right to proceed to arbitration only to the union—would {**32 NY3d at 979}mean that the employee could "elect" to exercise "his/her rights" only where the union agrees to arbitrate—a restriction that does not appear in the agreement. The employee may not know at the time of election whether the union will pursue arbitration, and therefore could not know the scope of "his/her rights" until it is too late. Further, the rights-granting language in the CBA treats the arbitration right and the Civil Service Law § 75 right in parallel, emphasizing the employee's right to choose. Section 75 gives Ms. Widrick a set of statutory procedural protections to prevent her wrongful termination. The CBA gave Ms. Widrick the right to choose between a hearing under Civil Service Law § 75 and arbitration; she has now lost both. Extinguishing her statutory right through language giving employees the right to make an election between arbitration and a section 75 hearing will cause employees to avoid arbitration when the state and federal public policy favors it.
The majority cites to County of Westchester v Mahoney to support the conclusion that only the union has the right to demand arbitration (56 NY2d 756, 758 [1982] [holding that where the terms of an agreement express the "plain and unambiguous intent" to limit who may demand arbitration, a petitioner's demand will have no legal effect]). But County of Westchester supports Ms. Widrick's position, not the majority's. There, the CBA was the fifth successive agreement in a series between the union and the community college. The first three agreements had stated that the step 3 grievance could be invoked by "either party." When the college and union replaced the third CBA with the fourth, they simultaneously added arbitration as the step 3 remedy and struck the provision that "either party" could invoke step 3, replacing it so that only the "College or Union" could do so. In County of Westchester, the amendment expressly removed the employee's right to initiate a step 3 grievance: "If the words 'either party' had remained, arbitration would have been available to the college or individual grievant, with such representation as he or she chose, and to the college or union for college-union grievances, i.e., nonindividual grievances" (84 AD2d 803, 804 [2d Dept 1981]). Here, there is no evidence of a bargained-for amendment to the CBA whose purpose was to remove an employee's right to demand arbitration. Further, Ms. Widrick is covered by Civil Service Law § 75, whereas the plaintiff in County of Westchester was not. Interpreting the agreement in County of Westchester as not granting employees an arbitration right when they have [*5]no{**32 NY3d at 980} statutory right is one thing; interpreting the CBA here to conclude that an employee electing arbitration instead of a statutory right subjects that election to the whim of the union is quite another.
Accordingly, I dissent.

Footnotes

Footnote *:That interpretation is consistent with other sections of article IV; for example, article IV, section 4 (A) provides that "[the union] has the right to file class action grievances on behalf of the employees"—a right not exclusive to the union.