**Thomas v Uber Tech., Inc.**

2025 NY Slip Op 31095(U)

April 4, 2025

Supreme Court, New York County

Docket Number: Index No. 157469/2024

Judge: Carol Sharpe

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. CAROL SHARPE**                    PART            **52M**

                                     *Justice*

------------------------------------------------------------------X   INDEX NO.          157469/2024

PHAEDRA THOMAS, MARDELINNE JOSEPH,                    MOTION DATE        10/17/2024
MARGUERITE DESRUISSEAUX,

                              Plaintiff,              MOTION SEQ. NO.        001

                    - v -

UBER TECHNOLOGIES, INC.,GETHO LEGER, CITY OF          **DECISION + ORDER ON**
NEW YORK, NEW YORK CITY POLICE DEPARTMENT,                    **MOTION**
JAMES TROCCHIA

                              Defendant.

------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12, 13, 14, 15, 16,
17, 18, 19, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47,
48, 49, 50, 51, 52, 53, 54, 56, 57, 58, 59

were read on this motion to/for                        _____STAY_____.

Upon the foregoing documents, the Decision and Order on this motion is as follows:

Plaintiffs moved for an order vacating Defendant Uber Technologies, Inc., ("Uber") Notice

of Intention to Arbitrate and permanently staying the arbitration. Uber cross-moved seeking an

order pursuant to CPLR § 7503 to compel plaintiffs to arbitrate their claims before the American

Arbitration Association, to deny plaintiffs' motion to Stay Arbitration, and for a stay of the action

against all defendants until after the arbitration. The Court considered all motions, cross-motions,

oppositions, and replies. Plaintiffs' motion is denied in its entirety, and Uber's cross-motion is

granted.

Plaintiffs commenced this personal injury action on August 14, 2024, which arose out of a

motor vehicle accident on February 11, 2024, when the vehicle in which plaintiffs were passengers

and which was being operated by Getho Leger, a driver for Uber, came in contact with a police

vehicle being operated by Police Officer James Trocchia. Uber filed its answer on October 16,

2024, and raised the affirmative defense that the action was barred by the arbitration agreement that plaintiff Phaedra Thomas consented to when she agreed to Uber's Terms of Use ("Terms") on January 29, 2023. Prior to filing its answer, Uber served plaintiffs with a Notice of Intent to Arbitrate dated October 7, 2024.

Plaintiffs moved to stay the arbitration on the grounds that they did not consent to the Terms as the language directing Phaedra Thomas to read the updated Terms was only a suggestion, and the Terms were only accessible if one were to click on the external hyperlink, which was insufficient to form notice. In opposition to Uber's cross-motion, plaintiffs do not challenge the validity of the delegation clause but seek discovery to determine whether the delegation provision was hidden from Phaedra Thomas.

Uber seeks to compel arbitration on the grounds that Uber's Terms consist of a valid and enforceable arbitration agreement, that Phaedra Thomas consented to the Terms when she booked the ride on the date of the accident, and that pursuant to the Terms, Mardelinne Joseph and Marguerite Desruisseaux are included in the arbitration agreement as third-party beneficiaries.

In support of the cross-motion, Uber presented the affidavit of Alejandra O'Connor, a Senior Manager with Uber, among other exhibits (NYSCEF Doc. # 31). Annexed to Ms. O'Connor's affidavit are exhibits which included a picture of the in-app blocking pop-up screen; Ms. Thomas' checkbox history; the updated Terms which contained the relevant Arbitration Agreements; and the Demand to Arbitrate letter. Ms. O'Connor established that the Uber Application ("Uber App") allows passengers who want transportation to connect with drivers. Phaedra Thomas, also known as Jordan Brown, has been a user of the Uber App since 2016.

Ms. O'Connor stated in her affidavit that Uber sends updates to Uber App users by an in-app blocking pop-up screen with the words "We've updated our terms." The message also has the

2

[* 2]

words, "We encourage you to read our Updated Terms in full," followed by the words "Terms of Use" and "Privacy Notice," each in bright blue text in separate lines, indicating a hyperlink, which when clicked displays the Terms of Use or the Privacy Notice. The in-app blocking pop-up screen also requires a user to check a box next to the language that reads that, "By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice." A user thereafter must click the word "Confirm" in order to continue to use the Uber App.

Uber's submissions established that it sent updates of the Terms via the in-app blocking pop-up screen to its users on January 18, 2021, December 16, 2021, and January 17, 2023. Phaedra Thomas' checkbox consent history shows that on January 28, 2021, December 30, 2021, and January 29, 2023, she confirmed that she read and agreed to both the Terms of Use and Privacy Notice. The submissions established that the screens with the notices of the updates were clear and uncluttered.

The three updates to the Terms stated that "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement…" The "Agreement to Binding Arbitration Between You and Uber" explained that it covered disputes including "incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Service..." All updates further stated that the "Arbitration Agreement shall be binding upon and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims are in relation to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement."

3

[* 3]

The December 2021 and the January 2023 Terms also contained the delegation clause which provides that "only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation applicability, enforceability, or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." The January 18, 2021, delegation clause used the words, "to resolve any disputes relating to the interpretation…"

New York has a "long and strong public policy favoring arbitration," *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990 (1997); *Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.*, 35 N.Y.3d 64, 125 N.Y.S.3d 340, 149 N.E.3d 33 (2020), "as a means of conserving the time and resources of the courts and the contracting parties." *Nationwide Gen. Ins. Co. v. Inv'rs Ins. Co.*, 37 N.Y.2d 91, 95, 371 N.Y.S.2d 463, 332 N.E.2d 333 (1975). The Court decides the initial issue of whether the parties had a meeting of the minds sufficient to form the elements of a contract to arbitrate. "Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended." *Id*, at 65.

The Court of Appeals in *Wu v. Uber Techs., Inc.*, 2024 NY Slip Op 05869, 2024 N.Y. LEXIS 1896*, decided the issue that is similar to the instant case, that is, whether the plaintiff agreed to arbitrate a personal injury action when, in a web-based app with a clickwrap process, she clicked the "confirm" box that she reviewed and agreed to the update to the Terms of Use. There the Court of Appeals applied traditional contract law to web-based terms of use and held that "the "clickwrap" process Uber used to solicit plaintiff's assent resulted in the formation of an agreement

4

[* 4]

to arbitrate. Moreover, a key term of that agreement expressly delegates to an arbitrator the exclusive authority to resolve all disputes as to the applicability and enforceability of the agreement." *Id*, at *1.

The party seeking to enforce the arbitration agreement has the burden to prove by a preponderance of the objective evidence that there is an agreement, *Id*, at *13, and must establish mutual assent to the material terms of the contract. In web-based contracts the courts examine "whether the offeree was put on inquiry notice of the contractual terms." *Id*, at *19. "An offeree is placed on inquiry notice of contractual terms when those terms are clearly and conspicuously presented to the offeree as a contract and made available for review." *Id*, at *14. In the web-based contract, the notice is evaluated objectively, and the user is bound to the terms of the contract, whether or not they read or understood them. *Id*, at *19. The objective proof of inquiry notice is in "the design and contents of such notice of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms [internal citation omitted]." *Id*, at *20. Courts have held that there is notice of the contractual terms where the link is immediately visible and is not buried in an obscure part of the website. *Id*.

The objective manifestation of assent is the engagement of "conduct that a reasonable prudent user would understand to constitute assent [internal citation omitted]." *Id*, at *21. In *Wu*, the Court of Appeals upheld Uber's presentation of the updated terms of use to plaintiffs by a "clickwrap – a means of acquiring binding assent from consumers that has been widely upheld by courts across the country [internal citation omitted]." *Id*, at *22. "Although a clickwrap agreement's terms and conditions must be clear and conspicuous, they need not all be simultaneously and immediately visible; the terms may be binding and enforceable even if they are only accessible through a hyperlink (*Meyer v. Uber Tech., Inc.*, 868 F3d 66, 75-78 [2d Cir

5

[* 5]

2017] ["That the Terms of Service were available only by hyperlink [did] not preclude a determination of reasonable notice" because "a reasonably prudent [ ] user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found"]). *Brooks v. Lang Yang*, 216 A.D.3d 505, 506, 190 N.Y.S.3d 309 (1st Dept. 2023). "The keys to enforceability are a reasonable indication of the existence of the additional terms and the user's being required to manifest assent to them (*see e.g Feldman v Google, Inc.*, 513 F Supp 2d 229, 237 [ED Pa 2007])." *Id.*

Parties "may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence [internal citations omitted]." *Revis v. Schwartz*, 192 A.D.3d 127, 140 N.Y.S.3d 68 (2nd Dept. 2020); *Brooks*, 216 A.D.3d at 506-507. The issue of the scope of the arbitrator's review must also be decided by the arbitrator. *Samuel v. Islam*, 233 A.D.3d 632, 224 N.Y.S.3d 57 (1st Dept. 2024); *Mejia v. Linares*, 219 A.D.3d 1251, 197 N.Y.S.3d 127 (1st Dept. 2023).

Here, Uber established by a preponderance of the evidence that there is a valid arbitration agreement and a valid delegation provision. It is undisputed that Phaedra Thomas ordered the ride through the Uber App. The objective evidence established that the updated notices on the screen were clear and uncluttered; that Phaedra Thomas had the opportunity to review the Terms; that Phaedra Thomas consented to the Terms and the delegation provision by checking that she reviewed and agreed to the Terms of Use and acknowledged the Privacy Notice; and that by clicking "Confirm" she gave her objective assent to the arbitration agreement and the delegation provision. Plaintiffs failed to establish that the notices were insufficient or only a suggestion, nor that the delegation provision was hidden or invalid. It is hereby

6

[* 6]

**ORDERED**, that plaintiffs' motion to vacate Uber's Notice of Intention to Arbitrate and permanently staying the arbitration is denied; it is further

**ORDERED**, that Uber's cross-motion pursuant to CPLR §7503 seeking to compel arbitration before the American Arbitration Association is granted; it is further

**ORDERED**, that the action is stayed against all defendants until after the arbitration; it is further

**ORDERED**, that Uber shall file and serve this Order on all parties within seven days of the date of this Order; and it is further

**ORDERED**, that all parties shall appear before this Court on September 10, 2025, at 9:45am for a status conference.

This constitutes the Decision and Order of the Court.

E N T E R:

_April 4, 2025_
_____
DATE

_[signature]_
HON. CAROL SHARPE, J.S.C.

HON. CAROL SHARPE
J.S.C.

CHECK ONE:

| | | | | |
|---|---|---|---|---|
| ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| ☐ GRANTED | ☒ DENIED | ☐ GRANTED IN PART | | ☐ OTHER |

APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

7

[* 7]