Wachtler, J.
The question on this appeal is whether the courts below properly stayed arbitration on the ground that the dispute was not within the scope of the arbitration clause.
Appellants (Investors) entered into a reinsurance treaty with the petitioners who agreed to indemnify Investors "for that portion of its General Liability writings which represents the excess of the sum of: (a) $50,000 each person, $50,000 each loss occurrence for Bodily Injury”. Investors, in turn, issued a general liability policy to Rova Farms Resort, Inc. providing coverage up to $50,000 for each person and $100,000 for each accident.
In July, 1965, while both of these agreements were in effect, one Lawrence McLaughlin was injured on Rova Farms’ prem *94 ises. McLaughlin and his wife commenced an action in the New Jersey courts and obtained a jury verdict of $225,000. When this judgment was affirmed on appeal to the New Jersey Supreme Court (McLaughlin v Rova Farms, 56 NJ 288), Investors paid the limit of its policy ($50,000) plus interest and costs, and Rova Farms paid the balance.
Rova Farms then brought a separate action against Investors to recover the balance, on the theory that Investors had, without good cause, refused to settle the McLaughlin action within the limits of its policy. Trial of .that action resulted in a judgment against Investors for $175,000 plus interest and costs, which was later affirmed on appeal (Rova Farms Resort v Investors Ins. Co., 65 NJ 474).
Investors then turned to petitioners for reimbursement claiming that since the judgment arose from an occurrence covered by one of their general liability writings, they were entitled to recover under the reinsurance treaty. Petitioners refused payment stating that the agreement only afforded coverage when Investors issued a policy with limits exceeding $50,000 per person, and not when, as here, the excess liability was based on a failure to settle a claim within the face amount of the policy. To resolve this impasse Investors served a notice of arbitration pursuant to article XII of the reinsurance agreement which provides, in part, as follows: "In case of any question or dispute between [Investors] on the one hand and the Reinsurer [petitioners] on the other touching the construction, meaning or effect of this Agreement or any article therein contained or any fact or matter connected with the carrying out of these presents or the rights or the liabilities of either of the said parties hereto, the same shall in every case be submitted to a court of arbitration.”
After receiving the notice petitioners moved to stay arbitration on the ground that the issue is not arbitrable since the contract simply did not provide for any reimbursement under these circumstances. In granting the stay the court stated: "Initially it does not appear that the subject matter of the Notice of Intention to Arbitrate is encompassed within the terms of the agreement, for the reinsurance provisions appear only to afford coverage in cases beyond the limits of the primary coverage herein. Moreover it does not seem that the agreement herein was intended to cover respondent for sums exacted punitively rather than for sums paid as a consequence *95 of its issuing a policy of insurance.” The Appellate Division affirmed, without opinion.
It is always useful to bear in mind that the announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. "One way to encourage the use of the arbitration forum” we recently noted "would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation. This conduct has the effect of frustrating both the initial intent of the parties as well as legislative policy” (Matter of Weinrott [Carp], 32 NY2d 190, 199). To this end the Legislature has assigned the courts a minimal role in supervising arbitration practice and procedures.
Generally it is for the courts to make the initial determination as to whether the dispute is arbitrable, that is "whether the parties have agreed to arbitrate the particular dispute” (Steelworkers v American Mfg. Co., 363 US 564, 570-571; CPLR 7503, subd [b]; compare Matter of Long Is. Lbr. Co [Martin] 15 NY2d 380). The ultimate disposition of the merits is of course reserved for the arbitrators and the courts are expressly prohibited from considering "whether the claim with respect to which arbitration is sought is tenable, or otherwise passing] upon the merits of the dispute” (CPLR 7501). Ideally then the courts should confine themselves to the arbitration clause and leave the overall contract to the arbitrators. This, of course, is facilitated when the arbitration clause specifies the issues which are subject to arbitration and those which are not.
More typically the parties adopt a "broad” arbitration clause agreeing generally to submit to arbitration all disputes arising out of the contract, or any dispute relating to the meaning and interpretation of the underlying agreement. Then the scope of the arbitration clause and the scope of the underlying agreement are identical, and disputes over interpretation run the hazard of being refined into questions of arbitrability. For instance in this case, the petitioners argue that since the "arbitration clause * * * has no greater scope than does the treaty to which it relates” the courts must first define the limits of the substantive agreement before they can determine whether the dispute is arbitrable. Thus in order to reach the threshold question, the petitioners would have the courts first resolve the merits of the dispute — the ultimate issue in this case.
*96 The way out of this apparent dilemma of course is to recognize that although the courts and the arbitrators in these cases cover the same field, they perform very different functions. Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court’s inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration (see, e.g., Matter of Exercycle Corp. [MarattaJ 9 NY2d 329).
As far as this case is concerned it is sufficient to note that the parties entered into a reinsurance agreement and that the appellant relying on the agreement has submitted a claim for reimbursement of a judgment. Petitioners have refused payment on the ground that the claim does not come within the letter of the agreement and the appellant urges that the agreement is to be liberally construed. This is a dispute "touching the construction meaning or effect of the agreement” and the courts may not stay arbitration by deciding on the merits whether or not the claim is tenable. A claim need not be tenable in order to be arbitrable.
The order appealed from should be reversed and the motion to stay arbitration denied.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, with costs, and motion to stay arbitration denied.