RAPID ARMORED TRUCK CORP., Appellant, v LOCAL 807 ARMORED CAR DIVISION PENSION FUND, Respondent.

Second Department, August 30, 1982

APPEARANCES OF COUNSEL

*Schwartzman, Weinstock Garelik & Mann, P. C.* (*Howard L. Mann* of counsel), for appellant.

*O'Connor & Mangan, P. C.* (*J. Warren Mangan* of counsel), for respondent.

OPINION OF THE COURT

MOLLEN, P. J.

Petitioner Rapid Armored Truck Corp. and Local Union No. 820 of the Armored Car Chauffeurs and Guards (Local 820), entered into a collective bargaining agreement for

the period beginning March 10, 1974 and terminating on March 13, 1977 (the 1974 Collective Agreement). The agreement provides, *inter alia,* that petitioner, as an employer, make certain payments to Local 820's pension fund (the Pension Fund) and it includes a broad arbitration clause empowering a three-member arbitration board to determine grievances or disputes between the employer and the union "under the interpretation and application of any of the provisions of this Agreement" (arts 26, 27, § B).

An amended "Agreement and Declaration of Trust" (the Trust Agreement), which is the basis of this proceeding, correlates with the 1974 Collective Agreement. The Trust Agreement was entered into for the purpose of creating a trust into which the employers' payments for pension benefits, paid in satisfaction of their obligations under the 1974 Collective Agreement, are to be made and from which such pension benefits are to be paid. The Trust Agreement provides for the "Termination of Individual Employers" (art VI) and contains an arbitration clause which is much narrower in scope than the provision for arbitration in the 1974 Collective Agreement (art V, § 4).

On March 13, 1977 (on which date, according to its terms, the 1974 Collective Agreement was to expire), the petitioner and Local 820 executed a certain "interim" agreement (the Memorandum Interim Agreement) and by letter dated May 11, 1977, the petitioner and Local 820 indicated that they had reached a further verbal agreement (the Letter Agreement). The Memorandum Interim Agreement provides that it would terminate upon agreement between Local 820 and three other named major employers[1] and that petitioner would become a party to the new agreement. An allegedly comparable agreement (the Successor Agreement) between Local 820 and the three other major employers was reached on March 20, 1979, but the petitioner refused to sign it.

Special Term found that the 1974 Collective Agreement was extended by the Memorandum Interim Agreement

---

1. Brink's Inc., Purolator Corp. and Wells Fargo Armored Service Corp., were the other three employer signatories to the Trust Agreement.

entered into on March 13, 1977[2] and held that all claims arising from petitioner's failure to make contributions to the Pension Fund and the questions as to whether petitioner's obligations to the Pension Fund continued after March 20, 1979 or whether the Memorandum Interim Agreement terminated on that date are matters for the arbitrators.

We affirm.

The 1974 Collective Agreement, as extended by the Memorandum Interim Agreement, requires the employer to contribute to the Pension Fund (art 25). The agreement provides that the Pension Fund "shall establish the amount and frequency of contributions to be made by the EMPLOYER to maintain the level of benefits as scheduled above on a sound actuarial basis" (art 25, § A, subd [iv]) and that the pension plan "must be actuarially sound and approved by the United States Treasury Department as being a qualified Pension Plan under the applicable provisions of the Internal Revenue Code" (art 25, § A, subd [vii]).

The extended collective agreement also provides a grievance procedure culminating in binding arbitration for the orderly disposition of "any disputes between EMPLOYER and UNION under the interpretation and application of any of the provisions of this Agreement. Such a dispute shall be defined as a grievance under this Agreement" (arts 26, 27). Arbitration is to be conducted by a three-member board (art 27, § A).

Article 27 further provides:

"B. It shall be the function of the Arbitration Board to determine said grievance or dispute but the Board shall confine its hearing to the grievances as submitted and shall have no power to alter, amend, add to, subtract from any of the terms of this Agreement, but shall determine only whether there has been a violation of this Agreement * * *

"E. The Arbitration Board shall have the power to award reinstatement with or without back pay."

---

**2.** (Cf. *Rochdale Vil. v Public Serv. Employees Union, Local No. 80,* 605 F2d 1290, 1296-1297.)

The Trust Agreement to which the petitioner, Local 820 and the three other employers are signatories recites in the preamble that: "[T]he Union and Employers have entered into a collective bargaining agreement pursuant to which the Employers have undertaken to make specific payments for the purpose of paying pension benefits to such of their employees as may qualify therefor; and * * * to effectuate such purpose it is desired to create a trust into which such payments shall be made and from which such pension benefits shall be paid."

The Trust Agreement provides for the collection of contributions (art V):

"Section 1. Each and every Employer participating herein, other than the Union, shall pay to the Trustees the contributions required to fund the level of benefits under the Pension Plan as prescribed by the Armored Car Industry Collective Bargaining Agreement, the amount of which shall be determined by the Trustees, based upon the reasonable actuarial assumptions recommended by the actuaries retained by the Trustees and adopted by the Trustees * * *

"Section 2. The Trustees shall have the power to make collections and receive Employer Contributions and shall hold the same for the purposes specified in this Trust Agreement.

"Section 3. In the event that any Employer shall fail to pay any contribution required to be made to the Trust Fund under the Armored Car Industry Collective Bargaining Agreement when such contribution was due and payable to the Trust Fund, as provided in Section 1, hereinabove, the Trustees may agree with such Employer to extend the time for making such contributions, provided, however, that such agreement shall be no less favorable to the Trust Fund than may be permitted by the United States Department of Labor, but no such extension shall in any way relieve such Employer or any other Employer from the obligation to make contributions to the Trust Fund as specified in the Armored Car Industry Collective Bargaining Agreement * * *

"Section 4. In addition to any enforcement remedies which may exist under the Armored Car Industry Collec-

tive Bargaining Agreement and under this Trust Agreement, the Trustees are authorized and empowered to initiate whatever proceedings that they, in their discretion, deem proper and necessary for enforcement of the Employers' obligations including, but not limited to, proceedings at law and in equity, arbitration, and any proceedings which would be generally available to the parties for enforcement of the Armored Car Industry Collective Bargaining Agreement."

As defined in the Trust Agreement, the term "Employers mean the employers who are parties to the Armored Car Industry Collective Bargaining Agreement with the Union and any employer not presently a party to such Agreement who may hereafter become a party thereto (whether or not the same shall have appointed a Trustee to act hereunder pursuant to Section 1(a) of Article III), provided such employer satisfies the requirements established hereunder by the Trustees for participation herein and agrees in writing to be bound by the terms and conditions of this Trust Agreement. The term 'Employers' also includes the Union where the context so requires" (art I).

The Trust Agreement provides for the termination of an individual employer's status (art VI):

"Section 1. An Employer shall cease to be a party hereto when * * *

"(b) It ceases to be an Employer within the meaning of Article I of this Trust Agreement."

The only provision in the Trust Agreement with respect to arbitration is the one previously referred to with respect to the collection of contributions under which the trustees are empowered to initiate arbitration proceedings for enforcement of the employers' obligations (art V, § 4).

In June, 1979 the Teamsters' general executive board voted to merge Local 820 into Local 807. Shortly thereafter, the trustees of Local 820's pension fund voted to amend the name of the fund to reflect the merger of Local 820 into Local 807 and to appoint Burton Turkus as permanent arbitrator for all arbitrations brought thereunder. The trustees then sought arbitration as to whether petitioner was required to contribute to the pension fund in accor-

dance with its contract with Local 807 as successor to Local 820.

Petitioner commenced this proceeding to stay the arbitration and Local 807 cross-applied to compel arbitration.

Petitioner contends that since the 1974 contract was to expire in March, 1977 and was extended by the interim agreement only to the date of the signing of the agreement with the other employers in March, 1979, there no longer exists a collective bargaining agreement between petitioner and Local 820 or Local 807 as successor. As such, petitioner argues that it is no longer a party to, nor bound by, the terms of the declaration of trust (arts I, VI) and, in addition, that there is no longer an arbitration agreement upon which Local 807 may base its demand.

Petitioner also contends that the July, 1979 amendment of the Trust Agreement, naming Burton Turkus as impartial arbitrator in place of the three-member board, was improper and that the improper amendment violated the underlying arbitration agreement.

After determining that the 1974 Collective Agreement was "so far as is relevant, extended" by the Memorandum Interim Agreement dated March 13, 1977, Special Term held that whether petitioner's obligation to the fund terminated in March, 1979 and whether petitioner continues to be an "Employer" as defined in the Trust Agreement are matters for the arbitrator to determine. However, Special Term held that although any determination as to the trustees' conduct is a matter for the arbitrator, arbitration must be conducted before a three-member board as agreed to by the parties. Special Term ordered arbitration of:

"1. All claims arising from the Petitioner's failure to make contributions into the Local 820 Armored Car Industry Pension Fund and/or its successor, Local 807 Armored Car Division Pension Fund;

"2. Whether Petitioner's obligations to either * * * Fund continued after March 20, 1979;

"3. Whether the March 13, 1977 Memorandum Interim Agreement between Local 820 * * * and Petitioner terminated on March 20, 1979."

The applicable general principle is that controversies arising between the parties to a collective agreement in the private sector will be held to fall within the ambit of the arbitration clause "unless the parties have employed language which clearly manifests an intent to exclude a particular subject matter" (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist.* [*United Liverpool Faculty Assn.*], 42 NY2d 509, 512). Where "the arbitration clause covers disputes as to contract interpretation, and the termination is alleged to have occurred on a basis 'implicit in [the] contract,' the termination question is arbitrable" (*Rochdale Vil. v Public Serv. Employees Union, Local No. 80*, 605 F2d 1290, 1295-1296; *Modern Sheet Metal Supply Co. v Wolf*, 61 AD2d 966).

By the terms of the 1974 Collective Agreement, the petitioner agreed to submit questions with respect to the interpretation of the agreement to binding arbitration (arts 26, 27, § G). So far as is pertinent, the 1974 Collective Agreement was extended by the Memorandum Interim Agreement. By its terms, the Memorandum Interim Agreement was to terminate when an agreement was reached between the local and the other three major employers. Such an agreement was executed on March 20, 1979. Accordingly, the question of whether the Memorandum Interim Agreement terminated on March 20, 1979 when the Successor Agreement was reached is within the ambit of arbitration. Any conflict among the several provisions of the 1974 Collective Agreement with respect to arbitration is a question of contract interpretation and therefore also within the realm of arbitration. "Furthermore, even if it were to be concluded that the agreement terminated, the dispute as to whether petitioner * * * was required to make the * * * pension fund contributions in question would still be within the realm of the arbitrators to determine, as the disagreement relates to 'an obligation arguably created by the "expired" agreement' and accordingly survived contract termination (*Nolde Bros. v Bakery Workers*, 430 US 243, reh den 430 US 988)" (*Modern Sheet Metal Supply Co. v Wolf*, 61 AD2d 966, 967, *supra*).

The reference to arbitration in the Trust Agreement is the clause empowering the trustees to initiate any proceed-

ings available to the parties for enforcement of the Collective Agreement, including arbitration (art V, § 4). Petitioner concedes that the trustees of the Pension Fund could collect contributions from petitioner in an appropriate judicial proceeding but contends that the arbitration clause in the Trust Agreement is too narrow to permit an arbitrator to interpret the terms of the Trust Agreement.

By the terms of the extended Collective Agreement, the petitioner agreed to make certain contributions to the Pension Fund, the amount and frequency of these payments to be determined by the fund's trustees (art 25). The Trust Agreement recites that it was entered into to effectuate the purposes of the Collective Agreement and that the amount of the employer's contributions shall be determined by the trustees. By the terms of the Trust Agreement, petitioner, as an "Employer" party to the Trust Agreement, ceases to be a party to that agreement when it ceases to be a party to the Collective Agreement (arts I, VI, § 1, subd [b]). In view of the strong presumption favoring arbitrability of disputes in the private labor sector and the fact that doubts with respect to arbitrability should be resolved in favor of coverage (*Nolde Bros. v Bakery Workers,* 430 US 243, reh den 430 US 988, *supra; Matter of Weinrott [Carp],* 32 NY2d 190; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509, 512, *supra; Matter of Bressette [International Talc Co.],* 527 F2d 211, 216), all claims arising from petitioner's failure to make contributions into the Pension Fund and the question of whether petitioner's obligation to the Pension Fund continued after March 20, 1979 are issues for the arbitrators.

Accordingly, we affirm the judgment denying petitioner's application to stay arbitration and granting the cross application to compel arbitration before a three-member arbitration board selected in accordance with the procedure provided in the 1974-1977 collective bargaining agreement between the petitioner and Local 820.

We have considered petitioner's other contentions and find them to be of no merit.

GIBBONS, WEINSTEIN and RUBIN, JJ., concur.

Judgment of the Supreme Court, Queens County, dated June 30, 1980, affirmed, with $50 costs and disbursements.