OPINION OF THE COURT
Meyer, J.
Under the Federal Arbitration Act it is not a basis for stay of arbitration that the arbitrator may be called upon to consider issues of waste and overreaching on the part of a corporate officer that are also involved in an action under Business Corporation Law § 720 brought by the corporation against the officer, or that a party to the court proceeding may later argue that the arbitrator’s determination should be given preclusive effect. The order of the Appellate Division should, therefore, be reversed, with costs, and the order of Special Term, New York County, should be reinstated.
I
GAF Corporation is a Delaware corporation engaged in the manufacture and sale of chemicals and other products. Jesse Werner joined the company in 1938 as a research chemist and remained with it until December 1983, when, after losing a proxy fight, he was terminated. He was then chairman of the board of directors, a position he had held since 1964. At the time he was *100 terminated he was serving under a written agreement dated September 17,1981, under which he was employed by GAF for a term of five years at a salary of $425,000 for the first year, increasing each year thereafter by $25,000, plus lifetime dental, medical and hospital benefits for himself and his wife and supplemental retirement benefits. He had also been granted options to purchase 120,000 shares of common stock under a stock option plan adopted by GAF in 1975.
As a result of Werner’s termination he was not paid the salary due him for the last half of December 1983 or the first half of January 1984 and on January 9,1984 was advised that pending the report of a study committee investigating his relationship with the company neither salary nor benefits would be paid. On January 18, 1984, Werner demanded arbitration pursuant to paragraph 12 of his employment agreement.[1] GAF then moved to stay arbitration, and Werner cross-moved to compel arbitration and to disqualify GAF’s designated arbitrator.
On January 3, 1984, Werner advised GAF of his intention to exercise his options to purchase 120,000 shares of its stock. He thereafter tendered payment by certified check of the $1,323,500 consideration due for those shares, but delivery was refused. On February 13,1984, Werner began an action against the corporation for compensatory and punitive damages for breach of the stock option agreements and against the new board of directors for compensatory and punitive damages for emotional distress.
In 1982 and 1983, during Werner’s tenure as chairman of the board, five separate derivative actions were begun in the Delaware Chancery Court, in New York State Supreme Court and in the United States District Court for the Southern District of New York against the corporation, Werner and the other members of the board of directors. Those actions charged mismanagement, waste, unfairness and self-dealing, resulting in approval by the board of Werner’s salary and benefits and improper and excessive use of corporate funds in the proxy battle. After its study committee’s report, the new board determined that the derivative claims against the old board should be prosecuted by the corporation. On March 5,1984, such an action by the corporation was begun and was followed by an application to stay Werner’s stock option action or, in the alternative, to consolidate it with GAF’s action.
*101 Special Term denied GAF’s motion to stay arbitration, granted Werner’s motion to compel arbitration but denied his motion to disqualify GAF’s arbitrator, and granted GAF’s consolidation request but stayed trial of so much of the consolidated action as related to Werner’s compensation rights under the September 17, 1981 employment agreement until completion of the arbitration. In denying the stay of arbitration, the Special Term Judge reasoned that GAF was involved in interstate commerce and, therefore, the Federal Arbitration Act (9 USC §§ 1-14) applied, that under both Federal and State law the validity of the agreement to arbitrate was a matter for the arbitrator and that the claims which involved overriding public policy considerations were minimal and did not so permeate the arbitrable issues as to require a stay.
The Appellate Division disagreed. Notwithstanding that CPLR 7503, dealing with stay of arbitration, contained no provision for a stay under such circumstances, it found authority to do so in CPLR 2201, which permits a stay to avoid a multiplicity of suits, and in the inherent power of the courts to control matters on its docket. It concluded that a stay of arbitration was required in the interests of justice because the arbitrable issue was but a minor part of the larger controversy presented by the GAF action, because the arbitrators may reach results inconsistent with the courts and because the members of the old board other than Werner who are defendants in GAF’s action are not parties to the arbitration, but may be affected collaterally by the arbitrator’s determination. It, therefore, modified Special Term’s order by granting the stay of arbitration, denying the cross motion to compel arbitration, and vacating the stay of trial. Werner appeals to us as of right (CPLR 5601 [a]). We conclude that under the Federal law applicable to this case, arbitration should not have been stayed and, therefore, reverse.
II
The Federal Arbitration Act (Act) provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract” (9 USC § 2). In a series of recent decisions the United States Supreme Court has emphasized again and again the overriding force of the policy favoring arbitration thus declared.
Those cases make clear that the Act is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary” (Cone Hosp. v Mer *102 cury Constr. Corp., 460 US 1, 24) and that, subject to only two limitations, it withdrew from the States the power to require resolution in a judicial forum of a claim which the parties have agreed to arbitrate, those limitations being that the arbitration agreement "must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce’ and such claims may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract’ ” (Southland Corp. v Keating, 465 US 1, 10-11). The right which the Act grants to enforce an arbitration provision is not dependent upon the forum — Federal or State — in which it is asserted (id., 465 US, at pp 13-17), nor will fraud in the inducement of the contract in which is contained the arbitration clause defeat the right (id., 465 US, at pp 10-11; Cone Hosp. v Mercury Constr. Corp., 460 US, at p 24, supra; Prima Paint Corp. v Flood & Conklin Mfg. Corp., 388 US 395; see, Ann., 11 ALR4th 774).[2] The preeminent concern of the Congress being that arbitration agreements within the coverage of the Act be carried out, such agreements are to be rigorously enforced, absent a countervailing policy in another Federal statute, even if the result is "piecemeal” litigation of the issues in separate proceedings in different forums (Dean Witter Reynolds v Byrd, 470 US —, —, 105 S Ct 1238, 1241-1243; Cone Hosp. v Mercury Constr. Corp., 460 US, at p 20, supra). Nor is the potentially preclusive effect of the arbitrator’s determination in the judicial forum a reason for refusing to compel arbitration, although the judge must consider in deciding whether and to what extent to accord preclusive effect to the arbitrators’ holding not only the differences in the expertise and authority of, and fact-finding procedures used by, the arbitrators from those of the judge, but also any difference in the interest of the party pressing the arbitration claim from that of the party litigating before the *103 judge, and the Federal and State statutory interests to be protected (Dean Witter Reynolds v Byrd, 470 US, at p—, 105 S Ct, at pp 1243-1244, supra; McDonald v City of W. Branch, 466 US 284, 287-292).
Applying these principles in the Southland case, the Supreme Court held the policy of the California Franchise Investment Law, which the California Supreme Court had interpreted to mandate judicial, and exclude arbitral, consideration, to be in violation of the Act and of the supremacy clause of the Federal Constitution (art VI, cl 2). The statutory policy embodied in Business Corporation Law § 720, which, GAF argues, was intended to protect shareholders of a publicly held corporation against the waste, overreaching and misconduct of corporate officers and directors, against which such shareholders are ill equipped to protect themselves, differs little, if at all, from that of the California statute. Neither the public shareholder nor the franchisee has much bargaining power, but both the franchisor and the directors and officers of a publicly held corporation are subject to governmental oversight. We conclude, therefore, with respect to Business Corporation Law § 720, that the Supreme Court decisions, and particularly the Southland decision, foreclose according it the effect for which GAF contends.
GAF argues also that a stronger Federal statutory policy than that which favors arbitration may proscribe enforcement of an arbitration clause and points to the Securities Act of 1933 (15 USC § 77a ff) and the Sherman Antitrust Act (15 USC § 1 ff) as examples of statutes that have been given that effect. The Supreme Court has held in Wilko v Swan (346 US 427) that a predispute agreement to arbitrate claims under the Securities Act of 1933 is not enforceable, but in Scherk v Alberto-Culver Co. (417 US 506) and again in Dean Witter Reynolds v Byrd (470 US, at p—, n 1, 105 S Ct, at p 1240, n 1) reserved the question whether the Securities Exchange Act of 1934 (15 USC § 78a ff) has the same effect. Neither the complaint in the GAF action nor its brief in this court refers to any particular section of either securities law as applicable and we do not deem it necessary to parse these statutes in light of the fact that only the employment agreement contains an arbitration provision and only the issues relating to Werner’s compensation rights were stayed by Special Term’s order. Thus, GAF remains free to litigate any issues which might be affected by either securities law raised by the stock option contracts on which Werner sued, or the excessive proxy fight expenditures involved in GAF’s second cause of action. It is at risk, therefore, if the arbitration proceeds, only to the extent that it raises such is *104 sues before the arbitrators as a defense to the compensation claim, but, as we have already seen, is free to argue the overriding Federal policies of the securities laws as a reason why any determination of the arbitrators adverse to it on those issues should not be given preclusive effect. Nor, in view of the holding in Dean Witter Reynolds (470 US, at p—, 105 S Ct, at pp 1240-1241, supra), can its suggestion that the issues are inextricably intertwined avail it.
We conclude, therefore, that the issues in the consolidated action do not so involve a Federal policy preemptive of the policy favoring arbitration enunciated by the Federal Arbitration Act as to require that arbitration be stayed,[3] and that, in any event, Business Corporation Law § 720 could not constitutionally be given that effect.
Ill
The ambiguity arising from the fact that sections 3 and 4 of the Federal Arbitration Act speak only of United States courts has been noted by the Supreme Court in Cone Hosp. v Mercury Constr. Corp. (460 US, at p 26, nn 34, 35, supra) and is pointed up by the fact that the consolidated action and the stay proceeding are in State, rather than Federal, court. There is no question that State courts are obligated by section 3 to grant a stay of arbitration (id.), but, as the Cone opinion states, it is less clear whether the same is true of an order to compel arbitration under section 4 of the Act (id.). Although GAF has not argued that so much of the Special Term order as compels it to arbitrate is improper (presumably because that would simply precipitate a Federal court application for such an order [id., at p 27]), we deem it proper to note the basis of our approval of that portion of the order.
Although the Arbitration Act does not contain a provision similar to that in the Federal Civil Rights Act directing that to the extent that the Federal laws "are deficient in the provisions nec *105 essary to furnish suitable remedies * * * the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such * * * cause * * * shall * * * govern the said courts in the trial and disposition of the cause” (42 USC § 1988), we conclude that the necessary effect of requiring that State courts enforce the Arbitration Act is the same, at least where, as in New York, there exists a statutory procedure for compelling arbitration (CPLR 7503 [a]). This is not a situation such as was involved in Matter of Rederi (Dow Chem. Co.) (25 NY2d 576, cert denied 398 US 939) where application of New York procedural law would be outcome determinative. To the contrary, as the Cone opinion notes, refusing to do so would achieve no more than to require an application to a Federal court, "a pointless and wasteful burden on the supposedly summary and speedy procedures prescribed by the Arbitration Act” (460 US, at p 27), and "at least one state court has held that § 4 does require state courts to issue § 4 orders to arbitrate where the section’s conditions are met. Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 67 Cal. App. 3d 19, 24-25, 136 Cal. Rptr. 378, 380-381” (460 US, at p 26, n 35).[4]
Moreover, doing so is consistent with our cases construing a broad arbitration clause, such as is in Werner’s employment contract, in conjunction with the mandate of CPLR article 75, to require submission to arbitration of all issues, including fraud in the inducement of the contract, except such as are specifically excluded by enumeration in the arbitration clause itself (Matter of Silverman [Benmor Coats], 61 NY2d 299, 308; Bayly, Martin & Fay v Glaser, 60 NY2d 577, affg 92 AD2d 850; Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91; Matter of Weinrott [Carp], 32 NY2d 190).
For the foregoing reasons, the order of the Appellate Division is reversed, with costs, and the order of Special Term is reinstated.
*106 Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Titone concur; Judge Alexander taking no part.
Order reversed, etc.

. That paragraph provides in pertinent part: "In the event that any disagreement of any kind shall arise between the parties hereto as to any matter or thing whatsoever hereunder, such disagreement shall be arbitrated in the City of New York”. The stock option agreements contained no arbitration provision.

. Prima Paint held (388 US, at pp 403-404) that in view of the direction in section 4 of the Act that the court consider "the making of the agreement for arbitration,” a court could determine whether the arbitration clause itself had been induced by fraud, but not whether the contract in which it was contained was so induced, that being an issue for the arbitrator, and both the Southland and Cone cases were careful to preserve that distinction. GAF’s brief seeks to bring this case within the distinction by arguing that Werner’s arbitration clause was a product of overreaching, but its petition claimed only that the agreement was void for waste and self-dealing and its papers contain nothing relating to the invalidity of the clause as distinct from the agreement. The issue, not having been considered by the courts below, is not properly before us. Therefore, we do not consider it further (Matter of Lane [Abel-Bey], 50 NY2d 864). Likewise not considered because not raised below is GAF’s contention that by failing to raise the arbitration clause in the earlier derivative actions, Werner has waived the right to arbitration.

. GAF points to the method for selection of the arbitrators outlined in the arbitration clause of the employment agreement (each party to appoint an arbitrator, the third "neutral arbitrator” to be selected by the two thus chosen or if they cannot agree by the President of the Association of the Bar of the City of New York) as an added policy reason against enforcement "[s]ince an arbitrator * ** * would be selected pursuant to a procedure established by the very defendants he is to judge.” To Special Term’s response that this method of choosing arbitrators has long been approved as a matter of New York law (Matter of Astoria Med. Group [Health Ins. Plan], 11 NY2d 128) we add that section 5 of the Federal Arbitration Act directs that if the contract for arbitration contains provision for a method of appointing arbitrators "such method shall be followed” (9 USC §5).

. Indeed, a number of State courts other than California have enforced an arbitration clause governed by the Federal Act (Merrill Lynch, Pierce, Fenner & Smith v Melamed, 453 So 2d 858 [Fla]; Merrill Lynch, Pierce, Fenner & Smith v Falowski, 425 So 2d 129, 130 [Fla]; Pittsfield Weaving Co. v Grove Textiles, 121 NH 344, 430 A2d 638; Episcopal Hons. Corp. v Federal Ins. Co., 269 SC 631, 239 SE2d 647; Merrill Lynch, Pierce, Fenner & Smith v McCollum, 666 SW2d 604 [Tex], writ refd n.r.e., cert denied — US —, 105 S Ct 811, reh denied — US —, 105 S Ct 1384; Allison v Medicab Intl., 92 Wn 2d 199, 597 P2d 380; see, Palmer Constr. Co. v Wichita Band Instrument Co., 7 Kan App 2d 363, 642 P2d 127; Village of Cairo v Bodine Contr. Co., 685 SW2d 253 [Mo]; Sentry Sys. v Guy, 98 Nev 507, 654 P2d 1008; Dean Witter Reynolds v Roven, 94 NM 273, 609 P2d 720; Burke County Public Schools v Shaver Partnership, 303 NC 408, 279 SE2d 816; Tennessee Riv. Pulp & Paper Co. v Eichleay Corp., 637 SW2d 853 [Tenn]).