OPINION OF THE COURT
Myriam J. Altman, J.
Plaintiffs, "contract advisors” to athletes, move to stay arbitration on the ground that the arbitration clause of a contract with the defendant, a football player with the Buffalo Bills (Bills), had not yet been triggered at the time the cause *906 of action for agents’ fees arose. The underlying facts of the case reveal a pernicious practice of encouraging young college athletes to enter into deceptive agreements which are postdated so they can continue to play college football. The athletes thus act unethically and in violation of the rules of the National College Athletic Association (NCAA) and the National Football League (NFL).
Ronald Harmon was a varsity football player at the University of Iowa. In March 1985, Harmon, then a junior, entered into an agreement with plaintiffs to represent him in connection with any future negotiations with the NFL and he was given $2,500, ostensibly as a loan. Although Harmon was not represented by counsel when the agreement was signed, his parents were present. The contract itself is dated January 2, 1986, after the conclusion of Harmon’s varsity eligibility. In the spring of 1986 Harmon was the first draft choice of the Bills and in August 1986 was signed to a $1,400,000 contract payable over four years. Plaintiffs seek their agents’ fee under the terms of the contract.
Article 4 of the contract provides that any dispute between a player and contract advisor shall be "resolved exclusively through the Arbitration Procedures set forth in Section 7 of the NFLPA [NFL Players Association] Regulations Governing Contract Advisors”. Section 7 in turn refers, inter alla, to "[a]ny dispute between an NFL player and a Contract Advisor concerning: (1) the conduct of individual negotiations by a Contract Advisor, (2) the payment of fees due or allegedly due by any player to a Contract Advisor, or (3) other activities of the Contract Advisor within the scope of these Regulations”.
Plaintiffs initially sought arbitration and defendant opposed it on jurisdictional grounds relating to fraud and illegality. The assigned arbitrator, John Culver, Esq., a former United States Senator from the State of Iowa, ruled in a preliminary opinion, that jurisdictional issues are, in the first instance, a question for the arbitrator. That ruling comports with the current law of this State.
In 1973 the Court of Appeals ruled that "an arbitration provision of a contract is separable”, and that therefore an "agreement to arbitrate would be 'valid’ even if the substantive portions of the contract were induced by fraud” (Matter of Weinrott [Carp], 32 NY2d 190, 198). The Court of Appeals had previously held in Matter of Wrap-Vertiser Corp. (Plotnick) (3 NY2d 17) that a broad arbitration clause covering any ques *907 tian "as to the validity, interpretation or performance” of an agreement did not extend to the issue of fraud in the inducement.
The basis of the earlier holding was that an arbitration clause could not be separated from the rest of a contract and, if the contract were to fall, then the arbitration clause would fall with it (see, Matter of Weinrott [Carp], supra, at 197). The change in approach in Matter of Weinrott conformed with the legislative intention (CPLR 7501 et seq.) to encourage arbitration. That intention could no longer be frustrated by parties who raised the defense of fraud in the inducement in order to litigate in the courts and thus delay arbitration. The change also brought New York law in conformity with Federal law (see, Erving v Virginia Squires Basketball Club, 468 F2d 1064).
The arbitration clause here is extremely broad. The contract refers to "any disputes between Player and Contract Advisor involving * * * the obligations of the parties hereunder”. It incorporates, by reference, section 7 of the NFLPA Regulations. As noted, that section contains an equally broad arbitration provision. Clearly then, the parties intended to arbitrate and issues of fraud are for the arbitrator to decide in the first instance.
Plaintiffs argue that the NFLPA Regulations have no applicability to this dispute because when the contract was signed the defendant was not a "player” and did not become such until he signed with the Bills in the summer of 1986 and began to play the following fall. They rely upon the language in the NFLPA Regulations, as well as the contract in question, which refers to disputes between player and advisor.
That contention is untenable. The contract itself refers to the defendant as "Ronald Harmon, hereinafter referred to as Player”. If, as plaintiffs suggest, the term "Player” determines whether the arbitration clause applies it would perforce also control whether there is any contract. To extend plaintiffs’ analysis to its logical conclusion would require a finding that as defendant was not a "Player” when the contract was signed, there is in fact no contract upon which to sue" or arbitrate.
The contract in fact has one purpose, and one purpose alone, and that is to allow plaintiffs to represent defendant in negotiations with an NFL team. If defendant were not signed by such a team, plaintiffs would not be entitled to a commission. The contract itself provides that its term commence on *908 the date stated in the contract and continues for the term of any NFL contract signed by the player within one year of the contract. A condition precedent to the triggering of an obligation by defendant under the contract is the signing of an NFL contract. Once such a contract was signed the arbitration provision came into effect.
Finally, at oral argument, plaintiffs’ counsel suggested that the arbitrator should be disqualified because he is a former United States Senator from Iowa and a graduate of the University of Iowa, the school attended by defendant Harmon. It is hard to believe that a person would sacrifice integrity for an old school tie. In any event, the University of Iowa has no apparent interest in this case. The argument makes as much sense as to suggest that a Justice of the Supreme Court of the State of New York should not be involved in this case because defendant plays for the only NFL team in this State. Plaintiffs are not precluded, however, from making a disqualification application before the arbitrator.
Accordingly, the motion to stay arbitration is denied. Defendant’s cross motion to dismiss for lack of proper service is denied. The affidavit from the process server indicates that defendant was personally served with a copy of the summons and complaint and defendant does not deny such service.