Gordon W. CELL, Respondent,

v.

MOORE & SCHLEY SECURITIES CORPORATION, Appellant,

Joseph Jenkins, Jr., Defendant.

No. C4–89–76.

Supreme Court of Minnesota.

Dec. 15, 1989.

Richard A. Lockridge, Andrea J. Kaufman, Opperman, Heins & Paquin, Minneapolis, for appellant.

Joseph Dudley, Jr., Steven C. Opheim, Dudley and Smith, P.A., St. Paul, for respondent.

KEITH, Justice.

Gordon W. Cell brought this action against his stock brokers, Moore & Schley Securities Corporation ("Moore & Schley"), a New York corporation, and Joseph Jenkins, Jr., an employee of the corporation. Mr. Cell alleged that he had been fraudulently induced to enter into a "Customer's and Margin Agreement" ("Agreement"), and sought to recover damages on various claims arising out of securities transactions between himself and Moore & Schley. Moore & Schley moved to dismiss and to compel arbitration pursuant to an arbitration clause in the Agreement. The Honorable P. Hunter Anderson, District Court for Isanti County, denied Moore & Schley's motion, ordering that the issue of fraud in the inducement of the contract be tried summarily before the case could proceed to arbitration or litigation. We reverse, finding that this Agreement is governed by New York law, which mandates arbitration in this case.

According to the complaint, Moore & Schley through its representative solicited Mr. Cell to enter into a series of stock transactions. After Moore & Schley purchased stocks for Mr. Cell in January 1987, he received a "Customer's and Margin Agreement" which he signed, and a bill which he paid. Over the ensuing several months, Mr. Cell paid approximately $40,-000 for "penny stock" in transactions with Moore & Schley. After protesting the management of his account, Mr. Cell demanded return of his purchase money. When Moore & Schley refused to return Mr. Cell's purchase money, Mr. Cell commenced this action.

Mr. Cell alleges that Moore & Schley, *inter alia,* misrepresented risks and potential benefits, ignored Mr. Cell's express instructions concerning purchase and sale of stock, and offered securities unregistered in Minnesota. Mr. Cell alleges that he is an unsophisticated investor, and that he had never previously had an account with Moore & Schley.

The Agreement contains the following arbitration clause:

> "[A]ny controversy which may arise between [Mr. Cell and Moore & Schley and its employee Jenkins] * * * concerning any transaction or the construction, performance or breach of this or any other agreement * * * whether entered into prior, on, or subsequent to the date hereof, shall be submitted to and settled by arbitration in New York City, New York * * *."

The Agreement also contains a clause stating that the Agreement is governed by New York law.

When Mr. Cell refused to submit to arbitration, Moore & Schley moved to dismiss the complaint and compel arbitration pursuant to the Agreement. Subsequent to the hearing on this motion, Mr. Cell admitted that he signed the Agreement, but claimed he was misled and fraudulently induced to enter into the Agreement.

The trial court denied Moore & Schley's motion and held that the issue of fraud in the inducement of the Agreement was to be tried summarily rather than submitted

to arbitration. The court cited both the Federal Arbitration Act, 9 U.S.C. § 4, and the Minnesota Uniform Arbitration Act, Minn.Stat. §§ 572.09, in its ruling. Moore & Schley noticed appeal to the court of appeals, and the appeal was transferred to this court pursuant to Minn.R.Civ.App.P. 118.[1]

The issue of arbitrability is to be determined by ascertaining the intention of the parties by the language of the arbitration agreement itself. *State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977). A reviewing court is not bound by the trial court's interpretation of the arbitration agreement and independently determines whether the trial court correctly interpreted the clause. *See Berthiaume,* 259 N.W.2d at 910 n. 8.

We must first determine the applicable law. The trial judge in this case applied both Minnesota and federal law. Both parties agreed that the Federal Arbitration Act (FAA) applies to the instant case. The Federal Arbitration Act does govern security agreements involving interstate commerce. *Cf. Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). The contract between the parties, however, contains a provision stating that New York law governs the contract.

With respect to which law applies, the United States Supreme Court recently held that where parties choose to make a contract subject to state law, the Federal Arbitration Act does not pre-empt state law unless state law is inconsistent with the purposes of the FAA. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* — U.S. —, 109 S.Ct. 1248, 1254–55, 103 L.Ed.2d 488 (1989). In *Volt,* the United States Supreme Court held that the application of the California Arbitration Act, which contains a provision allowing a court to stay arbitration during related litigation, is not pre-empted by the FAA "in a case where the parties have agreed that their arbitration agreement

will be governed by the law of California." *Id.,* — U.S. at —, 109 S.Ct. at 1251. The *Volt* parties' contract contained a standard arbitration clause, as well as a provision that the contract would be governed by " 'the law of the place where the Project is located.' " *Id.* The California Court of Appeal held that the parties had thereby incorporated the California rules of arbitration. The United States Supreme Court affirmed.

The *Volt* Court held that the FAA will pre-empt state law only "to the extent that [state law] actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Volt,* — U.S. at —, 109 S.Ct. at 1255 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The purpose of the FAA was to " 'overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' * * * and to place such agreements 'upon the same footing as other contracts.' " *Volt,* — U.S. at —, 109 S.Ct. at 1255 (citations omitted). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* Enforcing state rules according to the terms of the parties' agreement is fully consistent with the goals of the FAA, "even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." *Id.* Also, in applying "general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, * * * due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.,* — U.S. —, 109 S.Ct. at 1254.

■ New York law is in keeping with the objective of Congress in passing the FAA, and therefore is not pre-empted by the FAA where parties choose to make a

---

1. The same issue was appealed in *Michael–Curry Companies v. Knutson Shareholders Liquidating Trust,* 434 N.W.2d 671 (Minn.App. 1989), *pet. for review granted* (Minn. filed March 17, 1989). This court therefore elected to hear both cases.

contract subject to state law. It does give "due regard to the federal policy favoring arbitration," because it favors arbitration where parties clearly choose it. *See* N.Y. Civ.Practice Law and Rules §§ 7501–7514 (McKinney 1980) (hereinafter "CPLR"). New York statutory law is already very similar to federal law, which derived from New York law. *Weinrott v. Carp*, 32 N.Y.2d 190, 198–99, 298 N.E.2d 42, 47, 344 N.Y.S.2d 848, 856 (1973). As for case law, the New York Court of Appeals in *Weinrott* sought to bring it in accord with federal law concerning fraud in the inducement. *See Weinrott*, 32 N.Y.2d at 199 n. 2, 298 N.E.2d at 48 n. 2, 344 N.Y.S.2d at 856 n. 2. Finally, New York law liberally allows arbitration under broadly worded arbitration clauses. *Id.*, 32 N.Y.2d at 199, 298 N.E.2d at 48, 344 N.Y.S.2d at 856.

█ The issue, therefore, is whether the parties intended New York law to govern the arbitration clause. The Agreement in this case clearly states that "[t]his Agreement and its enforcement shall be governed by New York law." There is no reason to disregard this provision. The agreement does not bear the indicia of an "adhesion contract" warranting rescission. An "adhesion contract" is a "take it or leave it" form contract between parties of unequal bargaining power. *See Hauenstein & Bermeister, Inc v. Met–Fab Indus.*, 320 N.W.2d 886, 891 (Minn.1982). Although Mr. Cell alleges that he was unsophisticated, there is no indication that he was forced to enter into the agreement or was completely unable to negotiate its terms. Mr. Cell conducted his purchase of stock by telephone with Moore & Schley in New York. Therefore, New York law applies to the contract as a whole as specified in the Agreement.

█ Having decided that New York law applies to the Agreement, the issue becomes whether the arbitration provision contained in the Agreement encompasses arbitration of fraud in the inducement of the contract. Under New York law, parties may contract to submit the issue of fraud in the inducement to arbitration. *Weinrott*, 32 N.Y.2d at 194, 298 N.E.2d at 44, 344 N.Y.S.2d at 852. Whether the parties have so contracted, however, depends on the resolution of two subissues. First is the subissue of whether a valid agreement to arbitrate exists. *Weinrott*, 32 N.Y.2d at 194–98, 298 N.E.2d at 44–47, 344 N.Y.S.2d at 852–55; *see also* CPLR § 7503, subd. (a) (stating that a court "shall" direct parties to arbitrate "[w]here there is no substantial question whether a valid agreement was made or complied with * * *."); *cf. Prima Paint v. Floor & Conklin Mfg.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1966). Second is the subissue of whether the contractual arbitration provision encompasses fraud in the inducement of the contract. *See, e.g., Weinrott*, 32 N.Y.2d at 194, 298 N.E.2d at 44, 344 N.Y.S.2d at 852.

Under New York law, an arbitration provision of a contract is separable from the rest of the contract. That is, the agreement to arbitrate would be valid even if the substantive portions of the contract were induced by fraud. *Weinrott*, 32 N.Y.2d at 198, 298 N.E.2d at 47, 344 N.Y.S.2d at 855. *Weinrott* reversed previous New York case law, which held that arbitration clauses were non-separable, and if the underlying contract were vitiated by fraud, the arbitration clause would fall with it. *Id.*, 32 N.Y.2d at 197–98, 298 N.E.2d at 46–47, 344 N.Y.S.2d at 854–55 (noting *Wrap Vertiser Corp. v. Plotnik*, 3 N.Y.2d 17, 143 N.E.2d 366, 163 N.Y.S.2d 639 (1957) line of cases). *Weinrott* sought to comport with the legislature's intent to encourage arbitration. Parties who raised the defense of fraud in the inducement simply to delay arbitration by litigating frustrated that legislative intent. The *Weinrott* court also sought to bring New York law into accord with federal arbitration law. *Weinrott*, 32 N.Y.2d at 199 n. 2, 298 N.E.2d at 48 n. 2, 344 N.Y.S.2d at 856 n. 2.[2]

---

**2.** New York law differs from Minnesota case law, which holds that fraud vitiating the contract as a whole also vitiates the arbitration clause. *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 348, 197 N.W.2d 448, 456 (1972).

Thus, under New York law, a party wishing to avoid an arbitration clause must show that the arbitration clause *itself* was induced by fraud. *See Weinrott*, 32 N.Y.2d at 198, 298 N.E.2d at 47, 344 N.Y.S.2d at 855. Mr. Cell did not allege that he was fraudulently induced to enter into the arbitration agreement itself. Mr. Cell's affidavit states only that defendant Jenkins made false statements concerning the nature of the parties' obligations generally under the margin agreement.

■ To compel arbitration, the court must find that the parties intended to arbitrate that particular claim. The language of the agreement determines whether, and what claims, the parties intended to arbitrate. *Weinrott*, 32 N.Y.2d at 194, 298 N.E.2d at 44, 344 N.Y.S.2d at 852. New York courts hold that a "broadly worded" clause requires submission to arbitration of all disputes, including fraud in the inducement. In fact, in order to exclude a specific matter from a "broadly worded" clause, the parties must specifically exclude each matter which may not be arbitrated. *GAF Corp. v. Werner*, 66 N.Y.2d 97, 105, 485 N.E.2d 977, 983, 495 N.Y.S.2d 312, 318 (1985), *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1463, 89 L.Ed.2d 720 (1986). "Once it appears that there is * * * a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration." *Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America*, 37 N.Y.2d 91, 96, 332 N.E.2d 333, 335, 371 N.Y.S.2d 463, 467 (1975).

A review of New York case law has not yielded a clause exactly like the clause in the instant case. In this case, the clause provides for arbitration of "any controversy * * * concerning any transaction or the construction, performance or breach of this or any other agreement * * * whether entered into prior, on, or subsequent to the date hereof."

In *Weinrott,* a somewhat similar arbitration clause called for arbitration of "[a]ll disputes, controversies or claims arising hereunder, the interpretation of any of the provisions or the performance called for thereunder." *Weinrott,* 32 N.Y.2d at 196, 298 N.E.2d at 45, 344 N.Y.S.2d at 853. The *Weinrott* court found that this clause was broad enough to comprehend arbitration of fraud in the inducement, as well as all other controversies. *Id.,* 32 N.Y.2d at 194–98, 298 N.E.2d at 44–47, 344 N.Y.S. at 852–55. The clause in this case is even broader than that in *Weinrott,* because it expressly addresses conduct prior to the agreement, applying to any transaction "entered into prior * * * to the date hereof." Thus, it applies to pre-formation conduct such as Mr. Cell's claim that he was "fraudulently induced to buy stock" and that he was "fraudulently induced and fraudulently misled as to the purpose of this Agreement." *See also Silverman v. Benmor Coats, Inc.,* 61 N.Y.2d 299, 303, 309–10, 461 N.E.2d 1261, 1263, 1267, 473 N.Y.S.2d 774, 776, 780 (1984) ("[a]ny dispute with respect to the obligations of this Paragraph * * * shall be settled by Arbitration" held a broad clause which covered any dispute without limitation); *Walters v. Harmon,* 135 Misc.2d 905, 907, 516 N.Y.S.2d 874, 876 (N.Y.Sup. 1987) ("any dispute * * * involving * * * the obligations of the parties hereunder" held broadly worded, and incorporating fraud); *GAF Corp. v. Werner,* 66 N.Y.2d at 100 n. 1, 105, 485 N.E.2d at 979 n. 1, 983, 495 N.Y.S.2d at 314 n. 1, 318 (clause providing for arbitrability of "any disagreement of any kind * * * as to any matter or thing whatsoever hereunder" held broad enough to encompass all disputes). *See also Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America,* 37 N.Y.2d at 95, 332 N.E.2d at 335, 371 N.Y.S.2d at 466 (stating that "[m]ore typically the parties adopt a 'broad' arbitration clause agreeing generally to submit to arbitration all disputes arising out of the contract, or any dispute relating to the meaning and interpretation of the underlying agreement.").

Given the array of clauses listed above, we cannot find under New York law that the clause in the instant case is a narrow one, or that the clause does not bear a "reasonable relationship" to the dispute.[3] Doubts under New York law are to be construed in favor of arbitration. *Pepsi-Cola Metropolitan Bottling Co. v. Columbia–Oxford Beverages*, 100 A.D.2d 868, 870, 474 N.Y.S.2d 127, 129 (1984); *Rapid Armored Truck Corp. v. Local 807 Armored Car Div. Pension Fund*, 88 A.D.2d 434, 441, 453 N.Y.S.2d 745, 749 *appeal den.*, 58 N.Y.2d 602, 444 N.E.2d 1013, 458 N.Y.S.2d 1026 (1982). In deference to the liberal approach adopted by New York courts, we therefore hold that this clause is, under New York law, broad enough to comprehend fraud in the inducement.[4]

Dicta in *Weinrott* suggests, however, that in the case of a form contract, the court should scrutinize the circumstances surrounding inclusion of the clause in the contract. *Weinrott*, 32 N.Y.2d at 199, 298 N.E.2d at 48, 344 N.Y.S.2d at 856. The Agreement in this case is a form contract. Mr. Cell claims to be an unsophisticated investor. Further, compliance with the contract would force Mr. Cell to arbitrate in New York, presumably an inconvenient forum.

Although this is a form agreement, the drafter made some effort to make it clear. At the top of the agreement in block letters it states that "This is a contractual agreement. Do not sign it until you have read it carefully." The agreement has only two pages which are divided into block-capital headings. The arbitration clause is styled "ARBITRATION AND LITIGATION OF DISPUTES." Mr. Cell was not prevented from reading the contract, nor was he forced into the contract by duress or inferior bargaining power. This is not an "adhesion" contract. *See Hauenstein*, 320 N.W.2d at 891. In the context of forum selection clauses, a forum is "seriously inconvenient" only where one party would be completely unable to pursue or defend a claim if the forum clause were enforced. *Id.* at 890 (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 19, 92 S.Ct. 1907, 1918, 32 L.Ed.2d 513 (1972)). Although New York may be inconvenient, Mr. Cell has not alleged that he would be completely unable to pursue his claim there.

*Weinrott* stated in dicta that fraud which is "part of a *grand scheme that permeated the entire contract*, including the arbitration provision" should vitiate the arbitration clause as well as the substantive provisions of the contract. *Weinrott*, 32 N.Y.2d at 197, 298 N.E.2d at 46, 344 N.Y.S.2d at 855 (emphasis added). The New York Court of Appeals has never stricken an arbitration clause on this *Weinrott* theory. The supreme court, appellate division, has held that a petitioner, to show the fraud "permeated" the entire contract, must

3. This clause is also broader than the clause in *Prima Paint*, which did not refer to conduct before the making of the agreement. *See Prima Paint*, 388 U.S. at 398, 400, 87 S.Ct. at 1803, 1804 (an arbitration clause mandating arbitration of "[a]ny controversy or claim *arising out of* or *relating to* this Agreement or the breach thereof" (*emphasis added*) was broad enough to comprehend arbitration of fraud in the inducement of the contract). Thus, under the FAA this clause would also encompass fraud in the inducement.

4. This holding has no effect on this court's interpretation of the Minnesota Uniform Arbitration Act. This court has found clauses similar to the clause in *Weinrott* not to be broad enough when applying Minnesota arbitration law. In *Atcas*, 292 Minn. at 338, 348, 197 N.W.2d at 451, 456 (1972), a clause stating "[a]ny controversy whatsoever, relating to this Agreement shall be settled by arbitration * * *" was too narrow to

encompass fraud in the inducement. In *Thayer v. American Financial Advisers, Inc.*, 322 N.W.2d 599, 602–03 (Minn.1982), this court stated that "[a]ny claim, grievance or controversy between us arising out of your business or this agreement shall be settled by arbitration" was not broad enough to comprehend arbitration of fraud in the inducement.

Unlike the New York rule, Minnesota law holds that an arbitration clause is not severable from the contract itself. Thus, a claim of fraud in the inducement of the contract also vitiates the arbitration clause. "When the making of the agreement itself is put in issue, as is the result of a claim of fraud in the inducement, *that issue is more properly determined by those trained in the law.*" *Atcas*, 292 Minn. at 350, 197 N.W.2d at 457. When applying New York law, this court applies the broader policy of the New York Court of Appeals favoring arbitration.

show that the contract was not the result of "arm's length negotiation" or that the clause was inserted into the contract to effect the fraudulent scheme. *Information Sciences v. Mohawk Data Sciences Corp.*, 56 A.D.2d 706, 706, 392 N.Y.S.2d 737, 738 (1977), *aff'd*, 43 N.Y.2d 918, 374 N.E.2d 624, 403 N.Y.S.2d 730 (1978); *see also Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 798–99, 485 N.Y.S.2d 313, 314 (1985). Mr. Cell has not shown either of these circumstances.

Reversed and remanded for an order compelling arbitration pursuant to the parties' agreement.