In the Matter of Everquote, Inc. Securities Litigation, Plaintiff.



651177/2019

Plaintiffs: 
William S. Holleman and Garam Choe(Johnson Fistel, LLP)
Michael Gerard Capeci, Samuel Howard Rudman, and Magdalene Economou (Robbins Geller Rudman & Dowd LLP)
Defendants: 
Sharon Nelles and Andrew Finn (Sullivan & Cromwell LLP)
Timothy Jeffrey Perla and Inbar Robin Gal (Wilmer Hale)


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 30, 31, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58
were read on this motion to/forSTAY
For the reasons set forth below, because this court holds that the Private Securities Litigation Reform Act of 1995 (the Reform Act)'s automatic stay of discovery (15 USC § 77z-1 [*2][b] [1]) during a pending motion to dismiss applies in state court as well as federal court securities litigation, discovery is stayed pending resolution of the pending motion to dismiss.
The Facts Relevant to the Instant Motion
Mark Townsend, individually and on behalf of all others similarly situated, brought this action against Everquote, Inc. (Everquote), certain of Everquote's officers and directors, and the underwriters of Everquote's initial public offering alleging strict liability claims under Sections 11, 12, and 15 of the Securities and Exchange Act of 1933 (the 1933 Act). The defendants have filed a motion to dismiss. By Order to Show Cause (Mtn. Seq. 003), the defendants have also moved the court to stay discovery pending adjudication of the motion to dismiss pursuant to the Reform Act's automatic stay of discovery (15 USC § 77z-1 [b] [1]).[FN1]
The plaintiffs oppose the motion and urge this court to follow a court of concurrent jurisdiction's rulings in Matter of PPDAI Group Securities Litigation (2019 WL 2751278 [Sup Ct NY County, July 1, 2019, No. 654482/2018]) and Matter of Dentsply Sirona, Inc. Shareholders Litigation (2019 WL 3526142 [Sup Ct NY County, Aug. 2, 2019, No. 155393/2018]). 
In PPDAI, the court acknowledged that courts are divided in applying the Reform Act's discovery stay in state court (see, e.g., Switzer v W.R. Hambrecht & Co., L.L.C., 2018 WL 4704776, *1 [Cal Super Ct, Sept. 19, 2018, Nos. CGC-18-564904, CGC-18-565324]; cf. City of Livonia Retiree Health and Disability Benefits Plan v Pitney Bowes Inc., 2019 WL 2293924, *4 [Conn Super Ct, May 15, 2019, No. Xo8-FST-CV-18-6038160-S]). Ultimately, however, in PPDAI, the court wrote that:
[a]pplication of the federal PSLRA automatic discovery stay would undermine Cyan's holding that '33 Act cases may be heard in state courts (Cyan, Inc. v Beaver County Empl. Retirement Fund, 138 S Ct 1061, 1078 [2018]). Accordingly, I am persuaded that the PSLRA automatic stay is not applicable to an action brought in New York State court (PPDAI, 2019 WL 2751278, at *7).
In Matter of Denstsply Sirona, Inc., the same court wrote:
[t]o hold that the PSLRA automatic stay applies to state court actions would undermine Cyan's holding that '33 Act cases can proceed in state courts (Cyan, 138 S Ct at 1078). Thus, the PSLRA's automatic discovery stay is not applicable to state court actions (Matter of Dentsply Sirona, Inc., 2019 WL 3526142, at *6).
This court respectfully disagrees with this reasoning and conclusion. As discussed more completely below, Cyan only addressed the jurisdictional issue as to whether SLUSA stripped state courts of jurisdiction to adjudicate claims brought under the 1933 Act and whether removal of such claims is permitted.
Discussion
As this court has previously acknowledged, Congress enacted the 1933 Act and the Securities and Exchange Act of 1934 (the 1934 Act) to promote honest business practices in the securities market. The 1933 Act created private rights of action in connection with the initial public offering of securities and the 1934 Act regulates subsequent trading activity. 
Subsequently, while recognizing that private securities litigation is an "indispensable tool with which defrauded investors can recover their losses" (Merrill Lynch, Pierce, Fenner & Smith v Dabit, 547 US 71, 81 [2006], quoting HR Conf Rep No. 104-369, at 31 [1995]), as the United States Supreme Court in Merrill acknowledged, the United States House of Representatives identified in its House Conference Report "ways in which the class-action device was being used to injure 'the entire U.S. economy'" (id. [emphasis added]). To wit, the Reform Act was enacted to address perceived abuses in class action lawsuits (i.e., "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of clients whom they purportedly represent'" (id. [emphasis added]). Or as the United States Supreme Court more recently observed in Halliburton Co. v Erica P. John Fund, Inc.:
[The Reform Act] sought to combat perceived abuses in securities litigation with heightened pleading requirements, limits on damages and attorney's fees, a 'safe harbor' for certain kinds of statements,[FN2]
restrictions on the selection of lead plaintiffs in securities actions,[FN3]
sanctions for frivolous litigation, and stays of discovery pending motions to dismiss(573 US 258, 277 [2014] [emphasis added]).
The Reform Act did not by its terms apply to state law securities litigation, and, accordingly, plaintiffs could avoid the protections enacted under the Reform Act, by bringing complaints of securities misconduct under state law. To address this unintended "loophole," Congress passed the Securities Litigation Uniform Standards Act of 1988 (SLUSA), which bars "covered class action" state-law based securities claims and otherwise authorizes their removal to ensure dismissal.
15 USC § 78bb (f) (5) (B) defines a "covered class action" as:
(i) any single lawsuit in which—
(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
(ii) any group of lawsuits filed in or pending in the same court and involving common [*3]questions of law or fact, in which—
(I) damages are sought on behalf of more than 50 persons; and
(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.
Notably, Congress exempted derivative actions (15 USC § 78bb [f] [5] [C]) from the definition of "covered class actions" and otherwise provided that the state court's discretion as to whether an action should be "joined, consolidated or otherwise permitted to proceed as a single action" (15 USC § 78bb [f] [5] [F]) remains undisturbed by the definition of "covered class action." 
As this court recently observed, to the extent that there was certain ambiguity as to whether SLUSA divested state courts of jurisdiction to preside over "covered class action"[FN4]
securities lawsuits brought under the 1933 Act and whether such claims could be removed to federal court, the United States Supreme Court addressed these two issues in Cyan, Inc. v Beaver County Empl. Retirement Fund (138 S Ct 1061 [2018]).
In Cyan, the Beaver County Employees Retirement Fund filed a lawsuit in 2014 in California state court against Cyan, Inc. (Cyan) alleging that Cyan violated Section 11 of the 1933 Act by filing an inaccurate and misleading registration statement in connection with its initial public offering because the prospectus did not disclose anticipated issues with the company's revenue stream which issues ultimately led to a precipitous decrease in the stock price. Cyan moved to dismiss the lawsuit arguing that state courts no longer had jurisdiction to hear claims brought under the 1933 Act. The controversy involved statutory interpretation of 15 USC § 77v (a) and 15 USC 77p § (b).
15 USC § 77v (a) provides that:
The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions [emphasis added].[FN5]

15 USC 77p § (b) provides:
(b) Class action limitations
No covered class action based upon the statutory or common law of any State or subdivision thereof[emphasis added] may be maintained in any State or Federal court by any private party alleging
(1) An untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
(2) That the defendant used or employed any manipulative or deceptive device in [*4]connection with the purchase or sale of a covered security
The California trial court denied the motion to dismiss based on Luther v Countrywide Financial (195 Cal App 4th 789 [2011]), which had held that SLUSA did not eliminate concurrent state and federal court jurisdiction of claims brought under the 1933 Act.[FN6]
The case was ultimately appealed to the United States Supreme Court. The Federal Government filed an amicus curiae brief both opposing Cyan's jurisdictional position and also asking the question whether SLUSA enabled defendants to remove 1933 Act class actions from state to federal court (i.e., essentially arguing that Congress intended to make the federal courts the courts of exclusive jurisdiction for class action securities lawsuits). Although not directly at issue because Cyan never attempted to remove the case, the United States Supreme Court also addressed the issue of removal of claims brought under the 1933 Act because the removal issue was directly related to the parties' jurisdictional arguments.
15 USC 77p § (c) provides:
(c) Removal of covered class actions
Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).
In Cyan, the United States Supreme Court unanimously held that SLUSA did not divest state courts of jurisdiction of claims brought under the 1933 Act because the express language of 15 USC § 77v (a) maintains concurrent jurisdiction except as otherwise provided in 15 USC § 77p, which is limited to covered class actions based on the statutory or common law of any State (i.e., as opposed to federal law) and otherwise authorized those claims (i.e., and not claims brought under the 1933 Act) to be removed to federal court for dismissal.[FN7]

SLUSA's text, read most straightforwardly, leaves in place state courts' jurisdiction over 1933 Act claims, including when brought in class actions The critical question for this case is therefore whether § 77p limits state-court jurisdiction over class actions brought under the 1933 Act. It does not... But the section says nothing, and so does nothing, to deprive state courts of jurisdiction over class actions based on federal law (id.).
Cyan had offered a different statutory interpretation which the Court rejected. Much like the defendants in Luther, Cyan had argued that 15 USC § 77 (a)'s except clause refers only to 15 USC § 77p (f) (2), which refers to a covered class action (i.e., as opposed to 15 USC § 77p's entire section as the language expressly provides). This section does not refer to whether the suit is based on state or federal law and therefore the except clause, according to Cyan, necessarily divests exempt covered class actions from state court jurisdiction. In rejecting Cyan's attempt to "cherry pick" material from the cross reference, the Court explained that the express language of the statute does not refer to subsection 77p (f) (2) but instead refers to § 77p as a whole. To wit, the Court wrote:
['w]hen Congress want[s] to refer only to a particular subsection or paragraph, it sa[ys] so.' It said no such thing in the except clause (Cyan, 138 S Ct at 1070, quoting NLRB v SW General, Inc., 137 S Ct 929, 938—39 [2017]).
In addition, the Court wrote that the definition paragraph cannot be read to provide an exception to the rule of concurrent jurisdiction. Simply put,
[i]f Congress had wanted to deprive state courts of jurisdiction over 1933 Act class actions, it had an easy way to do so: just insert into §77p an exclusive federal jurisdiction provision (like the 1934 Act's) for such suits. That rule, when combined with the except clause, would have done the trick because it would have "provided" an "except[ion]" to §77v(a)'s grant of concurrent jurisdiction; by contrast, a mere definition of "covered class action" (as a damages suit on behalf of 50-plus people) does not so provide (id.).
The Court further commented that Cyan was making too much of a mere "conforming amendment" (id., at 1068, citing 112 Stat. 3230) and that for the 65 years prior to SLUSA, state [*5]courts had adjudicated all manner of 1933 Act cases including class actions which class actions could not be removed to federal court:
Cyan's take on the except clause reads too much into a mere "conforming amendment." 112 Stat. 3230. The change Cyan claims that clause made to state-court jurisdiction is the very opposite of a minor tweak. When Congress passed SLUSA, state courts had for 65 years adjudicated all manner of 1933 Act cases, including class actions. Indeed, defendants could not even remove those cases to federal court, as schemes of concurrent jurisdiction almost always allow (see supra, at 2). State courts thus had as much or more power over the 1933 Act's enforcement as over any federal statute's. To think Cyan right, we would have to believe that Congress upended that entrenched practice not by any direct means, but instead by way of a conforming amendment to §77v (a) (linked, in its view, with only a definition). But Congress does not make "radical—but entirely implicit—change[s]" through "technical and conforming amendments" (Director of Revenue of Mo. v CoBank ACB, 531 US 316, 324 [2001] [internal quotation marks omitted)]). Or to use the more general (and snappier) formulation of that rule, relevant to all "ancillary provisions," Congress does not "hide elephants in mouseholes" (Whitman v American Trucking Assns., Inc., 531 US 457, 468 [2001]). That is yet one more reason to reject Cyan's view of SLUSA's text (Cyan, 138 S Ct at 1071-72).
Cyan further argued that putting the uncooperative express language aside, its interpretation is consistent with SLUSA's purpose and legislative history. According to Cyan, Congress could not deliver on the Reform Act's promise in enacting SLUSA without divesting state courts of jurisdiction of 1933 Act class actions. The Cyan Court rejected this position in further indicating that SLUSA's purpose was to "limit the conduct of securities class actions under State law (emphasis added), and for other purposes" (id., citing 112 Stat 3227) and that purpose which the text actually reflects ensured that "the Reform Act's substantive protections necessarily apply" (id.). Finally, the court commented
[w]e do not know why Congress declined to require as well that 1933 Act class actions be brought in federal court; perhaps it was because of the long and unusually pronounced tradition of according authority to state courts over 1933 Act litigation (see supra, at 11—12). But in any event, we will not revise that legislative choice, by reading a conforming amendment and a definition in a most improbable way, in an effort to make the world of securities litigation more consistent or pure. This court has long rejected the notion that 'whatever furthers the statute's primary objective must be the law' (Rodriguez v United States, 480 US 522, 526 [1987] [per curiam]). Even if Congress could or should have done more, still it "wrote the statute it wrote— meaning, a statute going so far and no further" (Michigan v Bay Mills Indian Community, 572 U. S. ___, ___ [2014] [slip op., at 11] [internal quotation marks omitted]) (Cyan, 138 S Ct at 1073).
The heart of the issue before this court does not center around 15 USC § 77v (a) and 15 USC § 77p (b) or otherwise involve the jurisdictional question addressed in Cyan. Cyan therefore does not control the outcome of the issue presented by the instant motion.
However, Cyan is helpful in that it further underscores the most basic and fundamental rule in [*6]statutory interpretation—the court must start with the express language of the statute and presume that it means what it says. 
As the United States Supreme Court aptly said in Connecticut Nat. Bank v. Germain:
[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there (see, e.g., United States v Ron Pair Enterprises, Inc., 489 US 235, 241-42 [1989]; United States v Goldenberg, 168 US 95, 102-03 [1897]; Oneale v Thornton, 6 Cranch 53, 68 [1810]). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete" (Rubin v United States, 449 US 424, 430 [1981]; see also Ron Pair Enterprises, supra, at 241) (503 US 249, 253-54 [1992]).
The statute at issue in front of this court is 15 USC § 77z-1 (b) (1)—the Reform Act's automatic stay of discovery pending a motion to dismiss.
15 USC 77z-1 (b) provides:
(b) Stay of discovery; preservation of evidence
(1) In general
In any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.
(2) Preservation of evidence
During the pendency of any stay of discovery pursuant to this subsection, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.
(3) Sanction for willful violation
A party aggrieved by the willful failure of an opposing party to comply with paragraph (2) may apply to the court for an order awarding appropriate sanctions.
(4) Circumvention of stay of discovery
Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this subsection.
The simple, plain, and unambiguous language expressly provides that discovery is stayed during a pending motion to dismiss "[i]n any private action arising under this subchapter" (emphasis added). To be sure, Congress did provide that discovery could go forward notwithstanding the Reform Act's automatic stay—i.e., "upon a motion of the parties that particularized discovery is necessary to preserve evidence or to prevent undue prejudice." Period. Full stop. Nowhere in 15 USC § 77z-1 (b) (1) does the statute indicate that it applies [*7]only to actions brought in federal court. Indeed, the only reference to state court in 15 USC § 77z-1 (b) is in 15 USC § 77z-1 (b) (4) which expressly authorizes the federal court to stay discovery proceedings in any private action in a State court. In other words, to the extent that federal and state courts have concurrent jurisdiction to adjudicate 1933 Act claims, a federal court can stay discovery in a state court proceeding pursuant to 15 USC § 77z-1 (b) (4). The statute simply does not say that the automatic stay is limited to claims brought pursuant to the 1933 Act in federal court. Put another way, as the Cyan Court held, "[t]he statute says what it says—or perhaps better put here, does not say what it does not say" (Cyan, 138 S Ct at 1069). 
The plaintiffs argue that because 15 USC § 77z-1 (b) (2) preservation of evidence indicates that during the pendency of a stay, any party to the action with actual notice of the allegations must treat all documents, etc. as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure (FRCP), the stay contained in (b) (1) must only apply in federal court because state courts do not apply the FRCP (Pl's Mem. of Law in Opp. to Def's Motion to Stay Discovery Pending Resolution of Any Motion to Dismiss, at 11). The argument however fails. 
15 USC § 77z-1(a)(1) provides that "[t]he provisions of this subsection shall apply to each private action arising under this subchapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure" — i.e., in federal court. By contrast, as discussed above, 15 USC § 77z-1 (b) does not provide that this subchapter applies only to private actions brought as a plaintiff class action pursuant to the FRCP. 15 USC § 77z-1 (b) (2) as written creates a uniform approach to document preservation. Any party with notice of the allegations must treat documents "as if" they were the subject of a continuing document request for production under the FRCP—i.e., without regard to each individual and potentially different jurisdiction's rules regarding document preservation and spoliation. The "as if" highlights how Congress made clear that Federal Rule principles apply both to state and federal proceedings where document perseveration was concerned during the pendency of the discovery stay.
The plaintiffs also argue that because the 15 USC § 77z-1 (c) Sanction For Abusive Litigation provision like 15 USC § 77z-1 (b) (1) applies to "any private action arising under this subchapter" requires the court at the end of a case to determine if sanctions are warranted under FRCP 11, 15 USC § 77z-1 (c) necessarily means that the Reform Act's automatic discovery stay (15 USC § 77z-1 [b] [1]) only applies in federal court. The plaintiffs further argue that federal and state courts have universally held that FRCP 11 does not apply in state court proceedings (Pl's Mem. of Law in Opp. to Def's Motion to Stay Discovery Pending Resolution of Any Motion to Dismiss, at 12). This argument however also fails. 
FRCP 11 governs the signing of pleadings, motions and other papers and requires an attorney of record to sign the pleadings and certify to the best of their knowledge, information, and belief, that the presented papers are not being offered for an improper purpose, that the claims or defenses are either warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, and the factual contentions and denials have evidentiary support. After notice and an appropriate opportunity to respond, upon a determination by the court of a violation of FRCP 11, FRCP 11 subjects an attorney to an appropriate sanction. By contrast, under the FRCP, FRCP 37 (e) Failure to Preserve Electronically Stored Information governs sanctions for spoliation. And, the sanctions provided for in FRCP 37 (e) are discovery-related sanctions. In other words, 15 USC § 77z-1 (c) and FRCP 11 are simply inapplicable to 15 USC § 77z-1 (b). Most significantly, however, although [*8]Congress did provide for sanctions for violations of the Reform Act's automatic discovery stay and corresponding requirement for the preservation of evidence, 15 USC § 77z-1 (c) is not the applicable statutory provision, subsection (3) of 15 USC § 77z-1(b) (i.e., 15 USC § 77z-1 [b] [3]) is. And, as set forth above, 15 USC § 77z-1 (b) (3) Sanction for Willful Violation provides that "[a] party aggrieved by the willful failure of an opposing party to comply with paragraph (2) [preservation of evidence] may apply to the court for an order awarding appropriate sanctions (emphasis added)." Significantly, the language of the relevant sanctions provision, 15 USC § 77z-1 (b) (3), on its face does not refer to FRCP 37 (e) or sanctions generally under the FRCP. Rather, providing that an aggrieved party of a violation of the Reform Act's discovery stay and corresponding preservation of evidence requirement may apply for "appropriate sanctions" without reference to the FRCP, further underscores that Congress made clear that 15 USC § 77z-1 (b) applies both to state and federal proceedings.
Finally, the plaintiffs argue that if the Reform Act's automatic discovery stay (15 USC § 77z-1 [b] [1]) applies, state court practices and procedures would be constrained, including without limitation, that the court could not order a preliminary conference, direct a case to mediation, and the case could not even be assigned to the Commercial Division (see 22 NYCRR § 202.70 [e]). The argument is wholly without merit. 
15 USC § 77z-1 (b) (1) provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss," not in advance of one. As an initial matter, there was no pending motion to dismiss in this case when it had been assigned to the Commercial Division or at any initial conferences held in this case. In addition, Congress specifically authorized the stay of discovery by a federal court of state court proceedings pursuant to 15 USC § 77z-1 (b) (4). Furthermore, state court proceedings are often stayed for a host of other reasons. Moreover, Commercial Division Rule 11 (d) expressly permits the stay of discovery pending the determination of a dispositive motion. But, most importantly, this procedural/substantive distinction misses the point. The 1933 Act is a federal statute. It was Congress that created the specific rights covered by the 1933 Act including affording concurrent jurisdiction to state courts to adjudicate claims brought under the 1933 Act. This is not an issue of federal common law being applied to supply a rule of decision. Rather, this is a federal statute creating federal rules of decision that both state and federal courts are required to follow in deciding 1933 Act cases. It is axiomatic that Congress has the power under the United States Constitution, Article VI, Clause 2 (the Supremacy Clause) to provide for how these claims must be handled in state court which Congress has granted jurisdiction to hear these very federal claims. Simply put, in the Reform Act, Congress is not dictating how state courts are to run their dockets. The Reform Act merely provides for how 1933 Act cases are to be handled that are filed in state and federal court — i.e., Congress provided that during a pending motion to dismiss (except as otherwise provided in the statute), discovery should be stayed as to 1933 Act claims because in enacting the Reform Act and SLUSA, Congress was providing for a federal scheme as to federal claims. Similarly, as to document preservation, Congress provided that as to 1933 Act claims, the state courts should enforce document preservation "as if" such action were an action covered by the FRCP. As noted above, the critical issue is not how a stay of discovery squares in the abstract with either Commercial Division Rule 11 or CPLR 3214 or case assignment. Rather, the controlling issue is how this court implements the congressional mandate regarding how it is to manage 1933 Act claims that find their way into state courts. That mandate requires a stay, and is not, in any event, inconsistent with rules relating only to a "presumption" as to discovery generally with [*9]respect to dispositive motions of all kinds.
The court notes for completeness that holding that the discovery stay set forth in 15 USC § 77z-1 (b) (1) only applies in federal court and not in state court is not only unsupported by the text of the statute, but would also run afoul of the well-recognized purpose of the Reform Act and SLUSA. As discussed above, although Congress recognized that securities litigation was a critical vehicle for defrauded investors to recover their losses, Congress identified certain specific abuses that Congress decided to curtail in enacting the Reform Act—including the filing of lawsuits and making significant discovery requests in otherwise meritless lawsuits (i.e., lawsuits that will not survive a motion to dismiss) in the hope of encouraging early settlement. Accordingly, Congress enacted the automatic stay of discovery during a pending motion to dismiss to address this concern. There simply is no basis to find that Congress intended for this provision to only apply to actions brought in federal court. Finally, and at the risk of gilding the lily, the court notes that a divergence in the application of the Reform Act discovery stay in state and federal court would create the undesirable (and unsupported by the text of the statute or its purpose) and absurd incentive for lawsuits brought under the 1933 Act to be brought in state court as opposed to federal court to avoid the very protection supporting the enactment of the Reform Act and necessarily confounding Congress' acknowledged intention that the lion's share of securities litigation would occur in the federal courts (Cyan, 138 S Ct at 1073 ["SLUSA ensured that federal courts would play the principal role in adjudicating securities class actions."]).
Accordingly, discovery is stayed pursuant to 15 USC § 77z-1 (b) (1) and the parties are directed forthwith to a conference to finalize a briefing schedule for the pending motion to dismiss.
DATE 8/6/2019
ANDREW BORROK, J.S.C.



Footnotes

Footnote 1:As an initial matter, the court notes that it is curious that the defendants have moved for application of 15 USC § 77z-1 (b) (1) as by its terms it applies automatically and motion is only required for relief from its protection — i.e., "if particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." It is undisputed that the plaintiffs in this case have not moved for any such particularized discovery.

Footnote 2:See 15 USC § 77z-2 [1933 Act] and 15 USC § 78u-5 [1934 Act]).

Footnote 3:See 15 USC § 77z-1[a][2][A][ii] [1933 Act] and 15 USC § 78u-4[a][2][ii] [1934 Act]).

Footnote 4:15 USC § 78bb(f)(5)(B).

Footnote 5:The United States Supreme Court refers to this as the "except clause" in Cyan.

Footnote 6:In Luther, Mr. Luther, certain institutional investors and pension funds who had purchased mortgage-back securities between 2005 and 2007 from Countrywide Financial Corporation, several of its subsidiaries, certain individuals and several financial institutions, that were subject to the 1933 Act although not listed on a national exchange (i.e., a security which did not meet the requirements of 15 USC § 77p [f] [3]), brought an action alleging certain violations of the 1933 Act. The defendants moved to dismiss arguing that 15 USC § 77v creates an exception to all covered class actions — i.e., that when 15 USC § 77v refers to 15 USC § 77p, it refers only to the definition of covered class action in 15 USC § 77p (f) (2), and that therefore state court does not have jurisdiction. The trial court agreed. Ultimately, however, the Court of Appeals of California reversed, holding that 15 USC § 77v does not create an exception to concurrent jurisdiction for all covered class actions. Rather, it creates an exception to concurrent jurisdiction only as provided in 15 USC § 77p. See discussion infra.
Footnote 7:For the avoidance of doubt, the holding of Cyan is not based on whether the amendments to the 1933 Act were procedural or substantive in nature. Simply put, the plaintiffs read too much into the Cyan Court's generalization. See Plaintiffs Memorandum of Law, Pg. 3. In addition, notably, although certain provisions are discussed in the Cyan decision, the Reform Act's automatic discovery stay during a pending motion to dismiss is not among them. Finally, the court notes that the New York State Court of Appeals has recognized that Congress can limit both state substantive and procedural provisions. See, e.g., GAF Corp v Werner, 66 NY2d 97 (1985) holding that the Federal Arbitration Act (FAA) limited the ability to stay arbitration under CPLR § 2201 and further acknowledging that the right to enforce an arbitration is "not dependent upon the forum — Federal or State — in which it is asserted" citing Southland Corp. v Keating, 465 US 1, 10-1 (1984) where the United States Supreme Court wrote "[w]e are unwilling to attribute to Congress the intent, in drawing on the comprehensive powers of the Commerce Clause, to create a right to enforce an arbitration contract and yet make the right dependent on the particular forum in which it is asserted."